**Julie FRANK, Plaintiff Below, Appellant,**

v.

**HORIZON ASSURANCE COMPANY, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 18, 1988.
Decided: Feb. 16, 1989.

Eliot Alazraki (argued), and Gary S. Nitsche, Esquire, Eliot Alazraki, P.A., Wilmington, for appellant.

Francis J. Jones, Jr. (argued), Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., constituting the Court en banc.

WALSH, Justice:

This is an appeal from a decision of the Superior Court in a declaratory judgment action brought by an insured, Julie Frank ("Frank") against an insurer, Horizon Assurance Company ("Horizon"). Frank seeks recovery from Horizon for an uninsured motorist claim under a policy that insured Frank's family owned vehicles, other than the vehicle in which she was injured. The Superior Court upheld Horizon's denial of coverage and sustained the validity of an "other motor vehicle" exclusion in Horizon's policy. We view the exclusion as unenforceable on grounds of public policy and, accordingly, reverse.

I

The parties have stipulated to the facts underlying the coverage controversy. Frank was injured in an automobile accident on November 8, 1986, when her vehicle was struck by an uninsured motorist. The vehicle Frank was driving, a 1978 Toyota, was insured by Hartford Insurance Company ("Hartford") under a policy which provided liability coverage and uninsured/underinsured coverage in the amount of $15,000. Hartford paid Frank the policy limit of $15,000 of uninsured coverage.

At the time of the accident Frank and her husband jointly owned two other automobiles: a 1970 Ford and a 1979 Chevrolet. These vehicles were insured by Horizon under a policy providing liability and uninsured/underinsured coverage of $15,000 for each vehicle. The Horizon policy contained the following exclusion clause, regarding the availability of uninsured/underinsured coverage:

A. We do not provide coverage under this endorsement for **property damage** or bodily injury sustained by any person:

1. While **occupying,** or when struck by, any motor vehicle owned by you or any **family member** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

The effect of this provision, commonly known as an "other motor vehicle" ("OMV") exclusion is to deny coverage for a claim arising out of an accident involving a vehicle owned by the insured, but not listed as a covered vehicle under the policy. It is not disputed that Frank was an "insured" or "covered person" as that term is defined in the policy.[1] Thus, the sole basis advanced by Horizon for the disallowance of Frank's claim is the above-quoted OMV exclusion.

In sustaining the bar to recovery in accordance with the OMV exclusion, the Superior Court ruled that the exclusion is not inconsistent with the requirements of 18 *Del.C.* § 3902,[2] Delaware's uninsured motorist statute. The Superior Court decided that the purpose of the uninsured motorist provision is served if a motorist is afforded the opportunity to purchase uninsured coverage equal to the liability coverage of a single policy. The Court determined that because Frank had secured such coverage through her Hartford policy there was no statutory requirement that additional uninsured coverage be provided in the Horizon policy. The Superior Court thus viewed the clause containing the OMV exclusion as a valid exercise of freedom of contract by the parties and, therefore, enforceable.

## II

The legislative purpose embodied in the requirement that uninsured motorist coverage be available to all members of the public is clear: the protection of innocent persons from the negligence of unknown or impecunious tortfeasors. *See State Farm Mut. Auto. Ins. Co. v. Abramowicz,* Del. Supr., 386 A.2d 670, 673 (1978). Insurance policy provisions designed to reduce or limit the coverage to less than that prescribed by the Delaware statute, 18 *Del.C.* § 3902,

1. The pertinent policy provision reads:
"**Covered person**" as used in this Part means:
 1. You or any **family member.**
 2. Any other person **occupying your covered auto.**
 3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

2. 18 *Del.C.* § 3902 provides in relevant part:
(a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

(1) No such coverage shall be required in or supplemental to a policy when rejected in writing, on a form furnished by the insurer or group of affiliated insurers describing the coverage being rejected, by an insured named therein, or upon any renewal of such policy or upon any reinstatement, substitution, amendment, alteration, modification, transfer or replacement thereof by the same insurer unless the coverage is then requested in writing by the named insured. The coverage herein required may be referred to as uninsured vehicle coverage.

... (c) The affording of insurance under this section to more than 1 person or to more than 1 vehicle shall not operate to increase the limits of the insurer's liability. When 2 or more vehicles are insured under 1 policy, the limits of liability shall apply separately to each vehicle as stated in the declaration sheet, but shall not exceed the highest limit of liability applicable to any 1 vehicle.

are void. *State Farm Mut. Auto. Ins. Co. v. Abramowicz*, 386 A.2d at 673. Horizon argues that uninsured motorist coverage is not mandated by section 3902 but is an option under Delaware law. Horizon claims that because the purchaser of insurance is permitted to reject such coverage *in toto*, the insurer is allowed to offer uninsured motorist coverage with restrictions or exclusions, which reduce the extent of the coverage. Frank argues, to the contrary, that while the purchase of uninsured motorist coverage is an option that may be affirmatively waived by the insured, once the option is exercised the carrier may not restrict the class of persons which the statute is intended to benefit.

■ Before determining the validity of the exclusion clause in this case, we pause to consider the arguments, raised by the parties, regarding the general nature of uninsured motorist coverage. On this point, the opposing contentions turn on the question of whether uninsured motorist coverage is deemed personal to the insured, as Frank argues, or vehicle related, as Horizon argues in support of its exclusion. Although the question is of first impression in this Court, authority for both positions is found in jurisdictions nationwide.

An apparent majority of jurisdictions which have addressed the issue support the view that OMV exclusions are incompatible with statutorily created uninsured motorist insurance, because the insurance is personal to the insured, and public policy prohibits the limiting of this coverage based on the manner in which the insured is injured. We agree with this view. Of the more than twenty state courts of highest jurisdiction that have considered the question, we consider the most persuasive rulings are found in the Supreme Courts of Connecticut and New Jersey. *Harvey v. Travelers Indemn. Co.*, 188 Conn. 245, 449 A.2d 157 (1982); and *Fernandez v. Selected Risks Ins. Co.*, 82 N.J. 236, 412 A.2d 755 (1980).

In *Fernandez*, the New Jersey Supreme Court invalidated an "owned-but-uninsured vehicle" exclusion in an uninsured motorist policy which, like the policy under review in this case, provided general coverage for all members of the insured's household. The Court in *Fernandez* aptly explained its holding:

> Selected has drafted an insurance policy which by its terms provides coverage for members of the named insured's household. It has conceded that the claimants here all qualify as insureds under the terms of its insurance contract. Defendant's attempt to restrict the scope of its liability under the insurance contract, which it has made available to its insureds, weakens the statutory objective of encouraging full protection against uninsured and financially irresponsible motorists. Its attempted evasion of its contractual liability is therefore repugnant to the intent of the Legislature. As the Appellate Division in this case aptly observed, the statute "specifically and unambiguously requires an insurer to provide coverage for such sums ... which the insured would be able to recover from the operator of an uninsured automobile whether the insured was walking, standing, running, riding a motorcycle or occupying an uninsured motor vehicle." Where coverage has been accorded to insureds by the insurance contract under the UM endorsement, the owned-but-uninsured exclusion cannot be invoked to avoid payment.

*Fernandez v. Selected Risks Ins. Co.*, 412 A.2d at 757. (citations omitted)

Similarly, in *Harvey*, the Connecticut Supreme Court viewed the OMV exclusion as contrary to the principle that uninsured motorist coverage "is person oriented, not vehicle oriented" and thus contrary to public policy. *Harvey v. Travelers Indemn. Co.*, 449 A.2d at 160. The Court cited the language of the Connecticut uninsured motorist statute which provides coverage for "*persons* insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles...." *Id.* at 160 (quoting Conn.Gen. Stat. § 38–175c). This language is virtually identical to the language of 18 *Del.C.* § 3902(a). We, therefore, conclude that

the weight of authority and sound public policy support our decision that uninsured motorist coverage is properly considered personal to the insured and not vehicle specific. We now turn to the validity of Horizon's OMV exclusion, given Delaware's uninsured motorist statutory framework.

■ Horizon argues that the rulings in *Fernandez* and *Harvey* applied statutes which require the purchase of uninsured motorist coverage, while the Delaware statute merely creates an option for the purchase of such insurance. We note, however, that in a significant number of jurisdictions OMV or "other insurance" exclusions were invalidated even though uninsured motorist insurance coverage was a statutory option. *See State Farm Auto. Ins. Co. v. Reaves*, 292 Ala. 218, 292 So.2d 95 (1974); *Doe v. Rampley*, 256 Ga. 575, 351 S.E.2d 205 (1987); *Van Tassel v. Horace Mann Ins. Co.*, 296 Minn. 181, 207 N.W.2d 348 (1973); *Lowery v. State Farm Mut. Auto. Ins. Co.*, Miss.Supr., 285 So.2d 767 (1974); *Jacobson v. Implement Dealers Mut. Ins. Co.*, 196 Mont. 542, 640 P.2d 908 (1982); *Cothren v. Emasco Ins. Co.*, Okla.Supr., 555 P.2d 1037 (1976); *Touchette v. Northwestern Mut. Ins. Co.*, 80 Wash.2d 327, 494 P.2d 479 (1972). The rationale for rejecting the view that uninsured motorist coverage was optional and thus subject to unilateral limitation by the insurer was aptly expressed by the Supreme Court of Georgia in *Doe v. Rampley.*

Globe argues the exclusion is saved by the force of OCGA § 33–7–11(a)(3) allowing the insured to waive uninsured motorist coverage. The cited section allows waiver, not modification. The minimum coverage required is fixed by the statute. There is no allowance for the substitution of a lesser coverage. We note the absence in the record of any written waiver of uninsured motorist coverage. The acceptance of a policy with a nonconforming uninsured motorist provision is not such a waiver as the statute contemplates.

*Doe v. Rampley*, 351 S.E.2d at 206.

Similarly, it is significant that the Delaware statute mandates coverage, unless the insured affirmatively executes a waiver of coverage. We view an OMV exclusion clause, in a policy extending uninsured motorist coverage, as incompatible with this affirmative waiver requirement.

We recognize that, in what appears to be a minority of jurisdictions, OMV exclusions to uninsured motorist coverage have been upheld. *Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo.App. 372, 599 P.2d 266, 268 (1979); *Beliveau v. Norfolk & Dedham Mut. Fire Ins. Co.*, 120 N.H. 73, 411 A.2d 1101, 1103 (1980); *Employers' Fire Ins. Co. v. Baker*, 119 R.I. 734, 383 A.2d 1005 1008–09 (1978).[3] We also note that the United States District Court for the District of Delaware in "predicting" a ruling by this Court validated the use of an OMV exclusion in denying coverage under an uninsured motorist policy. *See Corso v. State Farm Mut. Auto. Ins. Co.*, D.Del., 668 F.Supp. 364, 373 (1987), *aff'd*, 3d Cir. 838 F.2d 1205 (1988). We decline to follow these decisions because they build upon the premise that uninsured motorist insurance is vehicle oriented and not personal to the insured—an assumption that is not supported by an analysis of both the letter and spirit of section 3902.

## III

■ Although the decisions from other jurisdictions which view uninsured motorist coverage as personal, or person oriented, are persuasive, in the final analysis, the question before us is one of interpretation of a Delaware statute and in that quest judicial predilection must give way to legislative intent. Section 3902 is silent with respect to the right of an insurer to impose exclusions through policy language, with the exception of subsection (c) which deals with the limitation of coverage for desig-

---

**3.** In still other jurisdictions OMV exclusions have been upheld because the exclusions are specifically authorized by statute. *See, e.g., Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartel-*

*man*, 288 Md. 151, 416 A.2d 734, 738–39 (1980). Implicit in such rulings is the recognition that exclusions in uninsured motorist coverage, to be valid, must be legislatively based.

nated multi-vehicle policies. If the General Assembly had intended to authorize the use of other exclusions "customary to the field" it would have adopted terminology similar to the language in the State's basic no-fault insurance law of the Delaware Motor Vehicle Code.[4] The no-fault provisions of section 2118(e) provide in relevant part:

> (e) The coverage described in paragraphs (1) through (4) of subsection (a) of this section may be subject to conditions and exclusions customary to the field of liability, casualty and property insurance and not inconsistent with the requirements of this section....

21 *Del.C.* § 2118(e).

Horizon concedes that section 3902 does not expressly authorize the use of an OMV exclusion but seeks to avoid the conclusion that, under the interpretative maxim, *expressio unius est exclusio alterius,* other exclusions are not permitted. Horizon argues that insight into the legislative intent is gained by applying the multiple vehicle exclusion language adopted in subsection (c) of section 3902 to its OMV exclusion. The Superior Court relied on this argument, ruling that section 3902(c) is evidence of a legislative intent not to permit compounding of uninsured motorist coverage.

■ In our view this interpretation of section 3902(c), as an indication of legislative intent regarding the scope of coverage required by section 3902(a), reads too much into section 3902(c). As the Superior Court acknowledged, section 3902(c) is of limited application. By its own terms, it does not purport to govern the question of multiple vehicle coverage through different policies. The purpose of the 1984 amendment to section 3902, which added subsection (c), was to limit an insurer's exposure to liability under a single policy which extended to more than one person or more than one vehicle. *See* 64 Del.Laws c. 426 (1984).

Rather than suggestive of legislative intent to generally prohibit multiple coverage or stacking, we find the enactment of section 3902(c) bespeaks of legislative policy that uninsured coverage shall not be undercut by restrictive policy provisions, unless such restrictions are specifically authorized by statute. This conclusion is consistent with the view that clauses which restrict the scope of insurance protection required by law are to be narrowly construed. *See State Farm Mut. Auto. Ins. Co. v. Abramowicz,* 386 A.2d at 673. We conclude, therefore, that section 3902, as fairly construed, does not authorize the use of OMV exclusions to limit uninsured motorist coverage.

## IV

■ As previously noted, the statute is silent regarding the use of coverage exclusions, but legislative history clearly suggests a legislative disinclination to authorize such exclusions. The primary basis for our refusal to approve an insurer's initiative to limit uninsured motorist coverage, however, is grounded in what we perceive as the public policy of this State. This Court recently invalidated a household exclusion designed to limit public liability coverage. *State Farm Mut. Ins. Co. v. Wagamon,* Del.Supr., 541 A.2d 557 (1988). While the applicable statute in *Wagamon* arguably permitted the use of "customary" exclusions, this Court found that the underlying public policy of required coverage superceded the exclusion:

> The State Farm policy clearly conflicts with the statutory scheme of sections 2118 and 2902. The law admits of no exclusion intended to deny compensation to a portion of the class of victims which the statutes were designed to protect.

*Id.* at 560.

■ The holding in *Wagamon* was directed to policy exclusions that had the

---

**4.** 21 *Del.C.* § 2118(e). The issuance of uninsured motorist coverage pursuant to 18 *Del.C.* § 3902 was first authorized in 1968 as part of the comprehensive revision of the Insurance Code. *See* 56 Del.Laws c. 380. However, when the General Assembly enacted Delaware's basic no-fault laws in 1972, 58 Del.Laws c. 98, it took the occasion to also modify certain provisions of 18 *Del.C.* § 3902 by: (1) requiring coverage to

match the maximum rather than the minimum liability amount subject to a limit of $300,000 and (2) permitting coverage for property damage to be subject to a $250 deductible. *Id.* Significantly, the modification of 18 *Del.C.* § 3902 appears in Section two of the session law, while the above quoted "exclusion permission" provision of 21 *Del.C.* § 2118 appears in Section One. *See* 58 Del.Laws c. 98.

effect of limiting mandatory liability insurance, but its focus on the protection of a class of insureds is pertinent here. If the purpose of section 3902 is to provide a mechanism whereby a "class of victims" is afforded protection through mandated coverage, it matters little whether that class may be reduced in number when an individual declines protection through waiver of all coverage. Once uninsured motorist coverage is purchased, the insurance consumer is entitled to secure the full extent of the benefit which the law requires to be offered. Attempts by insurers to reduce this benefit by hypertechnical language or exclusion clauses are equally repugnant to the public policy articulated in *Wagamon*—the protection of persons injured in automobile accidents.

Additionally, the public policy underlying section 3902 is to permit an insured to protect himself from an irresponsible driver causing injury or death. *See Home Ins. Co. v. Maldonado*, Del.Supr., 515 A.2d 690 (1986). This public policy is achieved by making available coverage that mirrors his liability insurance through the purchase of uninsured motorist coverage. Again, this policy goal is not advanced by restricting, in the policy providing the insurance, the class of persons to be protected.

Finally, Horizon argues that invalidation of the OMV exclusion in this case will permit Frank a double recovery. We note, however, that Frank seeks only coverage for which she, or her husband with whom she shares co-insured identity, has paid a premium. The paucity of Horizon's argument is demonstrated by its acknowledgment that under the terms of its policy, Frank would be entitled to uninsured motorist coverage if she had been injured as a pedestrian, as long as her claim resulted from the negligent operation of an automobile by an uninsured driver. Horizon's OMV exclusion admittedly, therefore, seeks to make recovery under insured motorist coverage contingent upon the manner in which the insured is injured. Horizon thus attempts to collect a premium for uninsured motorist protection while only paying on the policy if an insured is injured as a pedestrian or bystander, but not if occupying an owned motor vehicle not covered by the Horizon policy. Such a practice is inimicable to the purpose of section 3902—the promotion of the purchase of uninsured motorist coverage "to decrease the risk of loss to innocent motorists." *Home Ins. Co. v. Maldonado*, 515 A.2d at 693.

In sum, we conclude that the OMV exclusion in the Horizon policy is contrary to the clear public policy, expressed in 18 *Del.C.* § 3902, which encourages the purchase of uninsured motorist coverage. Accordingly, Horizon's OMV exclusion is declared invalid as a matter of law. The decision of the Superior Court to the contrary is REVERSED.