STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff Below, Appellant,

v.

Larry WASHINGTON and his son, LeShawn Washington, Defendants Below, Appellees.

No. 240, 1993.

Supreme Court of Delaware.

Submitted: Jan. 11, 1994.

Decided: April 15, 1994.

Rehearing Denied May 5, 1994.

Colin M. Shalk (argued), and Kenneth M. Doss, of Casarino, Christman & Shalk, Wilmington, for appellant.

Stephen B. Potter and H. Garrett Baker (argued), of Potter, Crosse & Leonard, P.A., Wilmington, for appellees.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice.

This is a case of first impression. State Farm Mutual Automobile Insurance Company ("State Farm") sought a declaratory judg-

ment in the Superior Court against its insured, Larry Washington ("the Father"), and his son, LeShawn Washington ("the Son"), denying uninsured/underinsured motorist coverage to the Son because he is the subject of a named driver exclusion in the Father's policy. The Son was injured while driving another person's car. The cause of the accident was solely the negligence of the driver of the other car. The Superior Court ruled that the exclusion was unenforceable. State Farm appeals, contending that it now is exposed to risks that the exclusion was designed to eliminate.

■ The public policy of our law requires that exclusions attempting to limit the right of injured persons to uninsured/underinsured motorist coverage be narrowly construed. The risk addressed by liability insurance relates to the tortious conduct of the insured, whereas the risk covered by uninsured/underinsured motorist coverage arises from the negligence of other persons either without insurance or having inadequate policy limits. The coverages are entirely different. Under the circumstances, the named driver exclusion for liability purposes bears no logical relationship to the public policy considerations served by uninsured/underinsured motorist protection. Accordingly, we affirm the judgment of the Superior Court.

## I.

The facts are stipulated. The Son was injured in an automobile accident caused by the negligence of John William Baker, Sr. ("Baker"), the driver of another car. At the time of the accident, the Son was driving his aunt's car, insured by Nationwide Insurance Company, which is not a party to this action. The parties agree that the Son was not negligent in a manner proximately causing or contributing to the accident. Baker had minimum insurance coverage of $15,000/$30,000 through Colonial Penn Insurance Company. The Son received the full $15,000 limit from Colonial Penn for his injuries and released all claims against Baker, while reserving any

claims against the underinsured motorist coverage issued by State Farm to the Father. The parties agree that the damages from Son's injuries caused by Baker may exceed $15,000.

At all pertinent times, the Son lived with the Father. About nine months before the accident, State Farm notified the Father of cancellation of his automobile policy because of the Son's poor driving record. The cancellation notice included an offer to continue the policy if it excluded coverage for the Son. The Father accepted the exclusion, resulting in the following endorsement to his policy (the Driver Exclusion Endorsement):

> In consideration of the premium charged for (your) policy it is agreed we shall not be liable and no liability or obligation of any kind shall attach to us for "bodily injury, loss" or damage under any of the coverages of this policy while a motor vehicle is operated by ... LeShawn Washington.

Thus, at the time of the accident, the exclusion was in effect, and the Son was not driving a car insured by the Father's policy. The Son contends, however, that as a relative residing with the Father, the named insured, the Son remains entitled to uninsured/underinsured coverage.

State Farm agrees that "but for" the named driver exclusion, the Son would be an insured under the Father's policy, as a relative and resident of the Father's household. State Farm also agrees that the named driver exclusion would not bar any claim for the Son's injuries had he been a passenger, rather than the driver, of his aunt's car at the time of the accident.

## II.

■ As a matter of public policy, the Delaware General Assembly requires that uninsured/underinsured motorist coverage be included in all automobile insurance policies, unless rejected in writing by the insured.[1]

---

1. Section 3902 of the Insurance Code provides in part:
   (a) No policy insuring against liability arising out of the ownership, maintenance or use of

any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided there-

"The legislative purpose embodied in the requirement that uninsured motorist coverage be available to all members of the public is clear: the protection of innocent persons from the negligence of unknown or impecunious tortfeasors." *Frank v. Horizon Assur. Co.*, Del.Supr., 553 A.2d 1199, 1201 (1989); *see also State Farm Mut. Auto. Ins. Co. v. Abramowicz*, Del.Supr., 386 A.2d 670, 672 (1978) [hereinafter *Abramowicz* ]. Furthermore, any insurance policy provisions which reduce or limit underinsured motorist coverage to less than that prescribed by the statute are void. *Frank*, 553 A.2d at 1201; *Abramowicz*, 386 A.2d at 672.

■ It is well settled that the public policy of this State is to narrowly construe exclusions and limitations on statutorily required insurance coverage. In *State Farm Mut. Auto. Ins. Co. v. Wagamon*, Del.Supr., 541 A.2d 557 (1988) [hereinafter *Wagamon* ], the insurer included a "household exclusion" denying liability coverage to an insured party for any personal injury claim brought by a member of the insured's family residing with the insured. Despite the statutory allowance for "customary exclusions," 21 *Del.C.* § 2118(e), we invalidated that exclusion as inconsistent with the financial responsibility laws and, therefore, contrary to public policy. *Wagamon*, 541 A.2d at 560–61. We held that:

This broad coverage [required by the financial responsibility law, specifically, 21 *Del.C.* §§ 2118 & 2902] is consistent with the legislative intent. Reading both statutes *in pari materia* can only lead to the conclusion that § 2118 was meant to pro-

tect persons injured in an automobile accident, regardless of their affiliation with the insured. Any attempt to restrict this class of protected persons is invalid.

*Id.* at 560 (citations omitted).

We next considered an insurer's attempt to limit required insurance coverage by an "other motor vehicle exclusion." *Frank v. Horizon Assur. Co.*, Del.Supr., 553 A.2d 1199 (1989). There, the insured was injured when an uninsured motorist struck her car. *Id.* at 1200. The insurer claimed that its insured was not entitled to uninsured motorist coverage because she was driving a car that, although owned by her, was not listed in her policy. *Id.* at 1201. We invalidated that exclusion as inconsistent with the public policy considerations mandating the availability of uninsured motorist coverage:

[W]e find the enactment of section 3902(c) bespeaks of legislative policy that uninsured coverage shall not be undercut by restrictive policy provisions, unless such restrictions are specifically authorized by statute. This conclusion is consistent with the view that clauses which restrict the scope of insurance protection required by law are to be narrowly construed.

*Id.* at 1204. Here, State Farm is attempting to enforce its named driver exclusion to limit underinsured motorist coverage mandated by 18 *Del.C.* § 3902.

### III.

■ Our law permits named driver exclusions.[2] They ensure continued coverage

---

in or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owner or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.
(1) No such coverage shall be required in or supplemental to a policy when rejected in writing....
(2) The amount of coverage to be so provided shall be not less than the minimum limits for bodily injury and property damage liability insurance provided for under the motorist financial responsibility laws of this State....
18 *Del.C.* § 3902. In this section, the provision for "uninsured" coverage is equated with that of

"underinsured" coverage. *See Home Ins. Co. v. Maldonado,* Del.Supr., 515 A.2d 690, 696 (1986).

2. Section 3909 of the Insurance Code provides, in part:
(a) The insurer shall have the right to exclude, cancel or refuse to renew coverage under an automobile insurance policy as to designated individuals....
(b) ... The premiums charged on any such policy excluding a named driver or drivers shall not reflect the claims, experience or driving record of the excluded named driver or drivers.
(c) With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses or claims arising out of

of an automobile where the driving record of a household member warrants non-issuance or cancellation.[3] *See Sykes v. Nationwide Ins.*, App., 327 Md. 261, 608 A.2d 1242, 1246 (1992); *Butts v. State Farm Mut. Auto. Ins. Co.*, Fla.Dist.Ct.App., 207 So.2d 73, 76 (1968). When a policy contains a named driver exclusion, the statute prohibits calculation of the premium reflecting the record of the excluded driver. 18 *Del.C.* § 3909(b). Thus, the family vehicle continues to be covered at a reasonable cost to the insured, while the insurer no longer bears the risks arising from the excluded persons' poor driving record.

State Farm essentially argues that once the Son was subject to the named driver exclusion, he was no longer an insured under the policy. That position, however, is inconsistent with the parties' stipulation—that the Son would be covered by his father's underinsured motorist coverage if he had been a passenger in, rather than the driver of, the aunt's car. State Farm insists that the named driver exclusion clause is rendered meaningless unless the Son is denied coverage here. According to State Farm, it will face the higher risk of the Son's negligence without receiving a premium for that peril. Although ominous in portent, that argument is specious. An auto insurer assumes two very different risks in terms of liability and uninsured/underinsured motorist coverages. In the first instance, the experience, driving record and negligence of the insured driver defines the risk to the insurer. In the latter, the risk is defined by the negligence of the public at large. Uninsured/underinsured motorist coverage protects those injured by negligent, financially irresponsible drivers. 18 *Del.C.* § 3902. It thus follows that State Farm assumes the same risk of the Son being hit by an uninsured/underinsured motorist whether or not he is a passenger in an automobile, a pedestrian or a driver. Hence, denying the Son underinsured motorist protection does not further the same purpose of

excluding him from the Father's liability coverage.

■ Our law requires that the attempted limitation upon the Son's right to uninsured/underinsured motorist protection be narrowly construed. *Frank*, 553 A.2d at 1201. Application of that test clearly dictates the result.

■ The Son was the innocent victim of another's negligence in the operation of a motor vehicle. That was the risk defined by the Father's uninsured/underinsured motorist coverage. It had nothing whatever to do with State Farm's enhanced *liability* exposure arising from the Son's negligence in the operation of an automobile. State Farm implicitly concedes the inconsistency of its position. The stipulation that the Son was entitled to underinsured coverage, but for the fact that he was driving a car, cannot withstand either analysis or application of the public policy purposes of our law. If there was an accident for which another driver is responsible, neither logic nor fairness support a result that denies an innocent victim of that occurrence protection merely because he was behind the wheel of a car, but assures such protection if he were a passenger or pedestrian on the street. In short, what occurred here is repugnant to the statutory requirement and clear public policy of 18 *Del.C.* § 3902. Accordingly, the named driver exclusion is unenforceable to the extent it is used by State Farm to deny the Son underinsured motorist coverage under his father's policy.

Many other jurisdictions have considered this issue. A majority hold, essentially on grounds of public policy, that named driver exclusions are not effective in excluding a relative living in the same household as the named insured from underinsured or uninsured motorist coverage. *See Reed v. Farm Bureau Mut. Cas. Ins. Co., Inc.*, Ala.Supr., 549 So.2d 3 (1989); *Employers Mut. Cas. Co.*

---

this operation or use of the insured motor vehicle, whether or not such operation or use was with the express or implied permission of a person insured under the policy.
18 *Del.C.* § 3909.

3. Because of the severe consequences of these exclusions, the General Assembly established a procedure governing the entire exclusion process, including the reasons warranting exclusion, a notice requirement, and the insured's remedy. 18 *Del.C.* §§ 3903–3909. In this case, State Farm properly followed those procedures.

v. McKeon, 159 Ariz. 111, 765 P.2d 513 (1988) (en banc); *Mullis v. State Farm Mut. Auto. Ins. Co.*, Fla.Supr., 252 So.2d 229 (1971) (adopting holding and reasoning of *Butts v. State Farm Mut. Auto. Ins. Co.*, Fla.Dist.Ct. App., 207 So.2d 73 (1968)); *Sykes v. Nationwide Ins. Co.*, App., 327 Md. 261, 608 A.2d 1242 (1992); *Atlanta Cas. Co. v. Payne*, Miss. Supr., 603 So.2d 343 (1992) [hereinafter *Payne* ]; *Thornton v. State Farm Mut. Auto. Ins. Co.*, Ohio App. 7th Dist., No. 92–B–61 (Aug. 26, 1993), 1993 WL 327669.

We recognize that a few courts have upheld an insurer's denial of underinsured motorist coverage based on a named driver exclusion. *See Fountain v. Atlanta Cas. Co.*, 204 Ga.App. 165, 419 S.E.2d 67 (1992) (Georgia Supreme Court expressly refused to consider the merits of this issue in *Fountain v. Atlanta Cas.*, 262 Ga. 16, 413 S.E.2d 450 (1992)); *Heritage Ins. Co. of America v. Phelan*, 59 Ill.2d 389, 321 N.E.2d 257 (1974); *State Farm Auto. Ins. Co. v. Kiehne*, 97 N.M. 470, 641 P.2d 501 (1982); *Miller v. Silvey Co.*, E.D.Mo., 473 F.Supp. 224, aff'd,

8th Cir., 610 F.2d 565 (1979); *Greene v. Great Am. Ins. Co.*, Tex.Civ.App., 516 S.W.2d 739 (1974) (holding disapproved by Texas Supreme Court in *Unigard Security Ins. Co. v. Schaefer*, Tex.Supr., 572 S.W.2d 303, 307–08 (1978)). However, because of the strong public policy of this State in favor of underinsured motorist coverage, and against any limitations upon such protection, we reject the holding and reasoning of those cases.

We therefore conclude that State Farm cannot deny the Son underinsured motorist coverage based on the named driver exclusion. Such a practice is repugnant to the clear public policy of this State. The judgment of the Superior Court is, therefore, AFFIRMED.