**Suzanne HURST, Plaintiff
Below, Appellant,**

**v.**

**NATIONWIDE MUTUAL INSURANCE
COMPANY, Defendant Below,
Appellee.**

**No. 456, 1993.**

Supreme Court of Delaware.

Submitted: Nov. 22, 1994.
Decided: Jan. 11, 1995.

Gary S. Nitsche of Czajkowski, Weik, Alazraki & Nitsche, Wilmington, for appellant.

Francis J. Jones, Jr. (argued), and Walter Hamberg, III of Morris, James, Hitchens & Williams, Wilmington, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice:

The petitioner-appellant, Suzanne Hurst ("Hurst"), was injured, during the course of her employment, while driving a motor vehicle owned by her employer. Hurst was involved in a collision caused by the negligence of a third-party tortfeasor, an uninsured motorist. The sole question presented in this appeal is whether Hurst's personal uninsured motorist insurance carrier, the defendant-appellee, Nationwide Mutual Insurance Company ("Nationwide"), is entitled to a set-off against its policy limits for payments made by Hurst's employer's uninsured motorist insurance carrier, Liberty Mutual Insurance Company ("Liberty Mutual").

The Superior Court granted Nationwide's motion for partial summary judgment. It ruled that Nationwide was entitled to a set-off against the limits of its uninsured motorist policy on the basis of this Court's holding in *Aetna Casualty & Surety Co. v. Kenner*, Del.Supr., 570 A.2d 1172 (1990). In this appeal, Hurst argues that Nationwide's claim for a reduction from its policy limits, rather than from her total damages for bodily injury, violates the dictates, as well as public policy, embodied in 18 *Del.C.* § 3902.

The consideration of Hurst's argument has resulted in our careful reexamination of the majority and minority views this Court expressed in *Kenner*. We have concluded that the majority holding in *Kenner* must be overruled as to any inconsistency with this opinion. Therefore, the judgment of the Superior Court, in favor of Nationwide, is reversed.

*Facts*

On June 17, 1988, Hurst was seriously injured when a negligent uninsured motorist, the third-party tortfeasor, collided with the truck she was driving. The truck was owned

by her employer, E.F. Higgins ("Higgins"), and, at the time of the accident, Hurst was acting within the course and scope of her employment.

The truck being operated by Hurst was insured under an automobile liability policy issued to Higgins by Liberty Mutual, which provided $40,000 of uninsured motorist coverage. Liberty Mutual was also Higgins' workmen's compensation insurance carrier. Liberty Mutual determined that it was required to pay Hurst $45,054.41 pursuant to Higgins' workmen's compensation policy. That sum covered Hurst's medical expenses and temporary total disability.

In its capacity as Higgins' workmen's compensation carrier, Liberty Mutual asserted that it was entitled to a prior lien and, therefore, reimbursement from Hurst's claim for payment against Higgins' uninsured motorist policy with Liberty Mutual. Liberty Mutual's workmen's compensation lien exceeded $45,000, while Higgins' uninsured motorist coverage with Liberty Mutual totaled only $40,000. Therefore, Liberty Mutual credited itself with the entire amount of Higgins' uninsured motorist coverage and paid no money directly to Hurst.

At the time of the accident, Hurst also carried insurance with Nationwide on her own motor vehicle. The Nationwide policy provided Hurst with uninsured motorist coverage in the amount of $50,000 (the "Policy"). The Policy provided, in relevant part, for uninsured motorist coverage as follows:

> Under this coverage we will pay all sums for bodily injury and property damage that you or your legal representative are legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle.... In any uninsured motorists claim, we will jointly determine with the insured or his legal representative whether there is a legal right to recover damages, and if so, in what amount. If agreements cannot be reached with regard to liability or amount of damages, the matter will be decided by arbitration. Any judgment against the uninsured of liability or amount of damages will be binding only if it was obtained with our written consent.

> An uninsured motor vehicle is:

> 1. one for which there is no auto liability bond, insurance, or other security at the time of accident....

The Policy also contained the following "reducing provision:"

> 3. The limits of this coverage and/or any amounts payable under this coverage will be reduced by:

> a. any amount paid by or for any liable parties.

Hurst sued Nationwide in the Superior Court seeking $50,000 of uninsured motorist benefits pursuant to her Nationwide Policy. Nationwide moved for partial summary judgment on the ground that it was obligated to pay no more than $10,000 under the Policy because of the "amount paid by or for any liable party" reducing provision (*i.e.*, the $50,000 policy limit offset by the $40,000 paid by Higgins' uninsured motorist policy with Liberty Mutual).

The Superior Court granted Nationwide's motion. It relied on this Court's decision in *Kenner* which interpreted 18 *Del.C.* § 3902 as permitting an insurer to subtract payments made on behalf of the tortfeasor from the policy limits of uninsured motorist coverage. The Superior Court's decision became a final judgment when a stipulated order was entered directing Nationwide to pay Hurst the remaining $10,000 under the Policy. This appeal followed.

*Section 3902*

*Uninsured Motorist Statute*

■ This Court has recognized the legislative purpose in mandating the availability of uninsured motorist coverage is to protect innocent persons from impecunious tortfeasors. *Frank v. Horizon Assur. Co.*, Del. Supr., 553 A.2d 1199, 1201 (1989). This Court has also held that "[i]nsurance policy provisions designed to *reduce* or limit the coverage to less than that prescribed by the Delaware statute, 18 *Del.C.* § 3902, are void." *Id.* at 1201–02 (emphasis added). Consequently, any restriction in the scope of coverage Section 3902 requires must be "specifically authorized by statute." *Id.* at 1204.

The relevant portion of Section 3902 provides:

> (b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.
>
> > (1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his legal representative are legally entitled to recover from the driver of an underinsured motor vehicle.
> >
> > . . . .
> >
> > (3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments.

18 *Del.C.* § 3902(b)(1) and (3).

Section 3902(b)(1) states that, when accepted, the additional uninsured coverage will pay for bodily injury damage that the insured is entitled to recover from the uninsured driver. Thereafter, Section 3902(b)(3) specifically permits a set-off or reduction by requiring the "exhaustion" of other available insurance.

### Kenner Debate

■ The issue in the present case, whether payments "by or for any liable parties" may be deducted from the Nationwide Policy limits, is the same issue that divided this Court in *Kenner*. In *Kenner*, the majority held that, where the policy language is ambiguous, the reduction permitted by Section 3902(b)(3) must be from the uninsured policy limits to be consistent with Section 3902(b)'s mandate to offer uninsured/underinsured coverage that mirrors basic liability coverage. *Aetna Cas. & Sur. Co. v. Kenner*, 570 A.2d at 1175. The dissent in *Kenner* argued that any reduction for other insurance payments should be made from the total amount

of the claimant's damages for bodily injury and that the "majority's emphasis on the mirror metaphor ignores the overriding public policy rationale for the statute recognized by *Frank* and numerous other cases." *Id.* at 1180.

In the case *sub judice*, this Court has re-examined whether the reduction (exhaustion) required by Section 3902(b)(3) is to be set-off against the claimant's total damages for bodily injury or the limits of the claimant's uninsured policy coverage. This careful re-examination of Section 3902 and other decisions of this Court leads us now to adopt the construction of Section 3902 taken by the dissent in *Kenner*, even in the face of unambiguous policy language to the contrary. *See State Farm Mut. Auto. Ins. Co. v. Washington*, Del.Supr., 641 A.2d 449 (1994); *Adams v. Delmarva Power & Light Co.*, Del.Supr., 575 A.2d 1103 (1990); *Frank v. Horizon Assur. Co.*, 553 A.2d 1199. Section 3902(b) mandates a liability carrier to offer uninsured coverage that "mirrors" the basic coverage. The mirror image limitation on the amount of coverage to be offered is not carried forward as a ceiling into Section 3902(b)(1), however, regarding the payment of damages pursuant to the policy limits of such additional coverage "upon *acceptance*."

### Section 3902 Construed

#### Uninsured Stacking Permitted

■ The logical operation of Section 3902 is reflected by its express terms. First, an offer of uninsured coverage must be extended, not to exceed the basic policy limits. 18 *Del.C.* § 3902(b). Second, the damages recoverable for "bodily injury" from the uninsured carrier are quantified in Section 3902(b)(1) as the amount the insured is "legally entitled to recover from the driver of an underinsured motor vehicle." Third, Section 3902(b)(3) provides that the amount of any other "bodily injury" insurance available to the claimant must be exhausted (deducted) before the payment "for bodily injury" by the uninsured carrier pursuant to Section 3902(b)(1). Thereafter, to the extent that the innocently injured claimant has not been fully compensated for all the bodily injury dam-

ages that could legally be recovered from the uninsured/underinsured driver, the claimant is entitled to be paid for the uncompensated bodily injuries, up to the full policy limits of the uninsured coverage. 18 *Del.C.* § 3902(b)(1) and (3).

This construction of Section 3902 is consistent with the prior decisions of this Court recognizing that the "legislative intent to compensate *fully* innocent drivers has been and continues to be evident on the face of our uninsured motorist laws." *State Farm Mut. Auto. Ins. Co. v. Arms,* Del.Supr., 477 A.2d 1060, 1064 (1984) (emphasis added). *See also State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d 449; *Adams v. Delmarva Power & Light Co.,* 575 A.2d 1103; *Frank v. Horizon Assur. Co.,* 553 A.2d 1199; *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* Del.Supr., 386 A.2d 670 (1978). In *Frank,* for example, the claimant had been paid $15,000 in uninsured motorist coverage from the carrier on the vehicle being operated by the claimant during an accident caused by a negligent uninsured tortfeasor. This Court held that Section 3902 invalidated an exclusion which would have denied the claimant another $15,000 in uninsured motorist coverage from the policy on another vehicle the claimant owned. If the majority holding in *Kenner* had been applied in *Frank,* a legal analysis of the exclusion invalidated in *Frank* would have been unnecessary because the $15,000 the first uninsured carrier paid would have been deducted from the $15,000 owed pursuant to the second uninsured policy.

■ In *Frank,* however, this Court held that "[r]ather than suggestive of legislative intent to generally prohibit multiple coverage or *stacking,* we find the enactment of Section 3902(c) bespeaks of legislative policy that *uninsured coverage shall not be undercut* by restrictive policy provisions, *unless such restrictions are specifically authorized by statute."* *Frank v. Horizon Assur. Co.,* 553 A.2d at 1204 (emphasis added). *See, generally,* Janet B. Jones, Annotation, *Combining or "Stacking" Uninsured Motorist Coverages Provided in Policies Issued by Different Insurers to Different Insureds,* 28 A.L.R. 4th 362 (1984). Consequently, we hold the provision in the Nationwide Policy, that permitted

a deduction for the amount paid "by or for any liable parties" from the Policy limits, is void as an exclusion contrary to the express language of Section 3902(b)(1) and (3). Those sections in the statute only authorize a set-off or reduction (exhaustion) of other insurance coverage against the full amount of damages for bodily injury that could be legally recovered by the claimant from the tortfeasor. *Frank v. Horizon Assur. Co.,* 553 A.2d 1199; *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* 386 A.2d 670; *Jeanes v. Nationwide Ins. Co.,* Del.Ch., 532 A.2d 595, 599–600 (1987). *See also Adams v. Delmarva Power & Light Co.,* 575 A.2d 1103.

### Section 3902 Construed

### All Manner of Injury Protected

The purpose of Section 3902 is to permit a risk adverse person to establish a fund to protect against losses caused by uninsured/underinsured motorists by contracting for supplemental coverage. *Adams v. Delmarva Power & Light Co.,* 575 A.2d at 1107. *See also State Farm Mut. Auto. Ins. Co. v. Nalbone,* Del.Supr., 569 A.2d 71, 75 (1989). Uninsured motorist coverage is "personal to the insured and not vehicle specific." *Frank v. Horizon Assur. Co.,* 553 A.2d at 1203. In *Frank,* this Court determined it inimicable to the purpose of Section 3902 to make recovery of supplemental uninsured coverage contingent upon the manner in which the claimant is injured. *Id.* at 1205. In *Frank,* for example, this Court noted the "paucity" of logic in the uninsured carrier's argument which acknowledged the claimant would have been covered if injured while a pedestrian but denied coverage while the claimant was operating a car covered by another uninsured policy. *Id.*

Recently, this Court reaffirmed the dual independent grounds for its holding in *Frank:* first, that Section 3902 permits stacking the policy limits of uninsured coverage in the absence of an express prohibition; and second, that since uninsured motorist coverage is personal to the claimant, it is inimicable to the legislative purpose of Section 3902 to make the recovery of supplemental uninsured coverage contingent upon the manner in which the claimant is injured.

*State Farm Mut. Auto. Ins. Co. v. Washington,* Del.Supr., 641 A.2d 449 (1994).[1] In *Washington,* this Court held that a named driver exclusion was "repugnant to the statutory requirement and clear public policy of 18 *Del.C.* § 3902." *Id.* at 452. We noted "[i]f there was an accident for which another driver is responsible, neither logic nor fairness support a result that denies an innocent victim of that occurrence protection merely because he was behind the wheel of a car, but assures such protection if he were a passenger or a pedestrian on the street." *Id.* Therefore, in *Washington,* because the claimant had not been fully compensated after receiving (exhausting) $15,000 from another insurance policy, the claimant was permitted to recover (stack) up to $15,000 more coverage from his father's uninsured motorist policy.

The *Kenner* mirror image ceiling construction of Section 3902 was not applied by this Court in *Washington.* To do so would have resulted in no recovery from the second uninsured motorist policy of $15,000, if $15,000 had already been received. Thus, the *Frank* and *Washington* holdings are inconsistent with this Court's holding in *Kenner.*

### This Case

### No Set–Off Against Policy Limits

### Reduction From All Bodily Damages

■ In this case, Nationwide argues that the Policy limits of the uninsured motorist coverage issued to Hurst must be reduced by the uninsured motorist payments made by Hurst's employer's uninsured motorist policy with Liberty Mutual. Nationwide's argument is contrary to both grounds for this Court's holding in *Frank* and the requirements of Section 3902. First, Nationwide argues that not only is it permitted to reduce the payment to Hurst by the amount paid pursuant to her employer's uninsured motorist coverage but that the reduction should be made from the Nationwide uninsured motor-

ist policy limits rather than from Hurst's total damages for bodily injury. Nationwide's reduction argument seeks to prevent Hurst from stacking her own Nationwide uninsured motorist policy limits upon her employer's Liberty Mutual uninsured motorist policy limits without any specific statutory support in Section 3902 for such a reduction. Second, Nationwide's reduction argument is based exclusively upon the manner in which Hurst was injured, contrary to *Frank* and *Washington.* Nationwide acknowledges that if Hurst had been driving her own vehicle, this Court's interpretation of Section 3902 in *Adams v. Delmarva Power & Light Co.,* 575 A.2d 1103, would not permit a reduction for a workmen's compensation lien.[2] According to Nationwide, however, since Hurst was driving her employer's vehicle, *Kenner,* not *Adams,* is controlling. This Court rejected analogous arguments in *Frank* and in *Washington* as illogical.

The Superior Court properly recognized that it was bound by this Court's holding in *Kenner.* The holding in *Kenner,* however, is contrary to the express terms of Section 3902 and inconsistent with the other decisions of this Court. *See State Farm Mut. Auto. Ins. Co. v. Washington,* 641 A.2d 449; *Adams v. Delmarva Power & Light Co.,* 575 A.2d 1103; *Frank v. Horizon Assur. Co.,* 553 A.2d 1199; *State Farm Mut. Auto. Ins. Co. v. Abramowicz,* 386 A.2d 670. This Court has concluded that its holding in *Kenner,* as to this issue, must be overruled and the judgment of the Superior Court must be reversed. *Accord State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990) (declining to follow *Kenner* ).

### Conclusion

To the extent this Court's holding in *Kenner* is inconsistent with the holding in this opinion, *Kenner* is overruled. The judgment of the Superior Court is reversed. This matter is remanded for further proceedings in accordance with this decision.

1. We note that this Court's decision in *Washington* did not include a citation to *Kenner.*

2. We note that the General Assembly has eliminated the ability of an employer's workmen's compensation carrier to assert a priority lien against an injured employee's right to payment pursuant to the employer's uninsured motorist coverage. 19 *Del.C.* § 2363.

WALSH, Justice, dissenting.

The majority has concluded that 18 *Del.C.* § 3902 precludes an insurer from contracting to limit or reduce its liability under uninsured automobile coverage by setting off the insured's recovery from a tortfeasor. Because I believe neither the statute, by express terms or underlying policy, nor prior precedent of this Court support such a holding, I respectfully dissent.

Although the appellant, Hurst, received the proceeds of the tortfeasor's liability insurance coverage in a somewhat convoluted fashion, the majority assumes, as do I, that the $40,000 received from Liberty Mutual was an "amount paid by or for any liable party" within the meaning of the reducing provision of Nationwide's policy. The majority rejects this resulting offset as "void as an exclusion contrary to the express language of Section 3902(b)(1) and 3." Op. at 14. In my view, the reduction provision is neither an exclusion nor violative of the clear language of the statute.

Section 3902 does not expressly provide that "a set-off or reduction (exhaustion) of other insurance coverage [is authorized only] against the full amount of damage for bodily injury that could be legally recovered by the claimant from the tortfeasor." Op. at 14. Whether such a prohibition may be implied from the statute is doubtful. Both the majority and dissenting opinions in *Kenner* viewed the statute as silent on the question: "On its face, section 3902 does not address the question on appeal: whether monies recovered from a tortfeasor must be offset against the insured's total damages or the insurer's policy limits." *Aetna Cas. & Sur. Co. v. Kenner,* Del.Supr., 570 A.2d 1172, 1179 (1990) (Moore, J., dissenting). The parting difference between the majority and the dissenters in *Kenner* turned on whether the policy provision was ambiguous, with the majority holding that it was not. Only after the dissenters deemed the policy ambiguous did

they apply what they perceived as the public policy considerations underlying section 3902.

Logically, for the majority in this case to adopt the construction of section 3902 taken by the dissent in *Kenner,* it must first determine that the clearly worded reduction clause in the Nationwide policy is ambiguous. The dissent in *Kenner* was careful to interpret the policy language against the insurer to provide a result "more consistent with the overriding purpose" of section 3902, but only after a finding of ambiguity. *Kenner,* 570 A.2d at 1177 (Moore, J., dissenting). Indeed, the dissent did not attempt to extend its public policy invalidation to reduction clauses which were unambiguous: "Certainly section 3902 *allows* insurers to offset against policy limits, *see e.g., Kulas* [*v. Nationwide Gen. Ins.,* Del.Super., C.A. No. 87C–OC–87, Babiarz, J., (May 30, 1989)], slip op. at 6, 1989 WL 64086, but it does not require that approach." *Kenner,* 570 A.2d at 1179–80 n. 2 (emphasis added).

In the face of an unambiguous policy provision, a statutory prohibition against a reducing clause should be based on a clear indication of legislative intent. I find no such force in the language of section 3902 or its history. To the contrary, the statutory scheme bespeaks a coordination of coverages. Section 3902(b)(3) provides that an insurer is not obligated to make payment under its uninsured coverage until after all other policies have been exhausted by the insured. Moreover, section 3902(a)(4) provides subrogation rights to the uninsured motorist coverage insurer. This latter provision is strongly suggestive of a legislative intent against "stacking" coverage to permit recovery of the aggregate amount of all policies which may cover the claimant's injury. *O'Hanlon v. Hartford Accident & Indemnity Co.,* D.Del., 439 F.Supp. 377, 383 (1977), *modf'd,* 639 F.2d 1019 (3rd Cir., 1981); *see also Corso v. State Farm Mutual Auto. Insurance Co.,* D.Del., 668 F.Supp. 364, 370–71 (1987).[3] The statutory right of subrogation by an uninsured motorist carrier contradicts any notion that

---

3. More than seventeen years have passed since the District Court of Delaware held that a "limits of liability" provision similar to the one here did not violate the letter or undermine the public policy of section 3902. *O'Hanlon,* 439 F.Supp. at 383. The General Assembly has since had the opportunity to change the thrice-amended statute to override the result in *O'Hanlon* but has failed to do so. *See Corso,* 668 F.Supp. at 371.

the insurer is prohibited from reducing its liability within policy limits.

The majority has determined that reduction clauses are *per se* against the public policy of this State. Since the General Assembly has never explicitly announced such a policy, the rationale offered by the majority is that the motor vehicle insurance laws militate strongly in favor of full and complete compensation to innocent drivers. I subscribe fully to that rationale but believe that it is equally served by the mirror image approach to the concept of uninsured/underinsured insurance coverage. This approach proceeds on the established principle that uninsured motorist coverage in Delaware is *supplemental* in nature. *Travelers Indemnity Co. v. Lake,* Del.Supr., 594 A.2d 38, 42 (1991) (collecting cases). "Section 3902 permits a Delaware motorist to mirror his own liability coverage and take to the roads knowing that a certain amount of protection will always be available." *Id.* The insured is thus afforded the opportunity to purchase insurance to provide a measure of self-protection to the same extent as if the tortfeasor had carried the same liability coverage as that of the insured. *Kenner,* 570 A.2d at 1175; *Brown v. Comegys,* Del.Super., 500 A.2d 611, 613 (1985).

The majority points to the decisions of this Court in *Frank v. Horizon Assurance Co.,* Del.Supr., 553 A.2d 1199 (1989), and *State Farm Mut. Auto. Ins. Co. v. Washington,* Del.Supr., 641 A.2d 449 (1994), as inconsistent with *Kenner* and supportive of its ruling. I disagree. Both *Frank* and *Washington* are coverage exclusion, not reducing clause, cases. *Frank* involved an "other motor vehicle" exclusion while *Washington* addressed a disclaimer of coverage under a "named driver" exclusion. In each case the insurer sought to avoid all liability for uninsured/underinsured coverage, without regard to the existence, or sufficiency, of a tortfeasor's liability coverage. In *Frank,* this Court, sitting *en banc,* rejected the application of "other motor vehicle" exclusion because it offended the public policy underlying section 3902 which is "achieved by making available coverage that mirrors his liability insurance through the purchase of uninsured motorist

coverage." *Frank,* 553 A.2d at 1205. In *Washington,* this Court applied *Frank* to invalidate a named driver exclusion of *any* coverage as repugnant to public policy. Neither case addressed the *amount* of coverage issue.

In my view, the difference between reducing provisions and exclusions is dispositive in this case. That difference is more than semantic since the former merely limits the *amount* of coverage while the latter controls the *availability* of coverage. As our prior precedent attests, exclusions are void because they are not contemplated by the rationale underlying section 3902. A reducing clause, however, does not seek to disclaim coverage but merely to limit or reduce the insurer's liability *only* after other compensation has been received by the insured. The insured is thus not precluded from recovery—only from a recovery beyond the contracted-for policy limits. This approach achieves the mirror image of protection by permitting the insured to have confidence that the amount of liability insurance on the other driver will be equal to his own. In my view, section 3902 requires no more.

If there is a concern that, in a given situation, the amount of uninsured coverage will be insufficient to compensate an insured for the total damages suffered at the hands of an uninsured or underinsured tortfeasor, the insured is free to contract for more than the $300,000 worth of uninsured coverage which the statute mandates that an insurer offer. The parties to a contract of insurance may agree to change the nature of coverage to the extent not expressly prohibited by law. Moreover, the legislature may, by statute, require that reducing clauses not be applied to uninsured coverage despite the intention of the contracting parties. But such a change should not be accomplished by judicial interpretation in an area where express statutory standards have heretofore applied. *See State Farm Mut. Auto. Ins. Co. v. Hallowell,* Del.Supr., 426 A.2d 822, 827 (1981).

In sum, I would affirm the decision of the Superior Court as consistent with precedent and in keeping with the rationale underlying

the mirror image concept of uninsured insurance. Accordingly, I respectfully dissent.