NATIONWIDE MUTUAL AUTOMOBILE INSURANCE COMPANY, and Adrian McCollough Balmer, Defendants Below, Appellants,

v.

Christine PEEBLES and Horace Peebles, Plaintiffs Below, Appellees.

NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff Below, Appellant,

v.

David C. MAYO and Carol J. Mayo, Defendants Below, Appellees.

Nos. 155, 1996, 242, 1996.

Supreme Court of Delaware.

Submitted: Jan. 7, 1997.
Decided: Feb. 18, 1997.

Gilbert F. Shelsby of Mason, Ketterman & Morgan, Newark, and Angus R. Everton (argued), of Mason, Ketterman & Morgan, Baltimore, MD, for appellant.

Kenneth M. Roseman (argued), of Ciconte, Roseman & Wasserman, Wilmington, for appellees, Christine Peebles and Horace Peebles.

Michael Weiss (argued), and Yvonne Takvorian Saville, of Michael Weiss, P.A., Wilmington, for appellees, David C. Mayo and Carol J. Mayo.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ. (constituting the Court *en Banc*).

HOLLAND, Justice, for the majority:

This is a consolidated appeal from two Superior Court judgments. The defendant-appellant in each proceeding is Nationwide Mutual Automobile Insurance Company ("Nationwide"). The plaintiffs-appellees in one case are Christine Peebles and Horace Peebles. The other plaintiffs-appellees are David C. Mayo and Carol J. Mayo.

The single common legal issue in both cases relates to the underinsurance policy issued by Nationwide to each of the plaintiffs. The Superior Court was required to construe the deduction of other policies "available to the insured" that is required by 18 *Del.C.* § 3902(b)(3). In each case, the Superior Court held that reduction must be set off against the claimant's total damages for bodily injury, rather than being set off against the limits of the claimant's underin-

surance policy. The Superior Court concluded that holding was compelled by this Court's construction of Section 3902(b)(3) in the context of an uninsured claim. *Hurst v. Nationwide Mut. Ins. Co.*, Del.Supr., 652 A.2d 10 (1995). We agree. The Superior Court's judgment in each case is affirmed.

## FACTS

### Mayo v. Nationwide

On May 5, 1992, Carol J. Mayo was injured in an automobile accident caused by the negligence of a third party tortfeasor. The liability insurance carrier for the third party tortfeasor paid the liability policy limits of $25,000 to Carol Mayo in settlement of her claims against the tortfeasor. At the time of the accident, Carol Mayo had $100,000 in uninsured/underinsured motorist coverage with Nationwide.

Because she sustained damages in excess of $25,000, Carol Mayo asserted an underinsured claim against Nationwide. At a binding arbitration hearing, the arbitration panel determined $135,000 to be the total value of Carol Mayo's damages. Nationwide paid Mayo $75,000, pursuant to the terms of its underinsurance policy. It arrived at the figure by deducting the $25,000 paid to Mayo by the tortfeasor's liability insurance carrier from the $100,000 per accident maximum of her underinsured policy limits.

Nationwide then filed a declaratory judgment action in the Superior Court. That action sought a determination of whether the liability limits paid by the tortfeasor's insurance carrier were to be subtracted from the limits of Mayo's underinsured motorist policy with Nationwide or the amount of Carol Mayo's total damages. The Mayos filed a motion for judgment on the pleadings on the basis that the policy provision relied upon by Nationwide was void as a matter of law.

### Peebles v. Nationwide

Christine Peebles was injured in three different motor vehicle accidents. The first accident occurred on March 20, 1992. The third accident occurred on October 11, 1992.[1] In each of those accidents, the motor vehicle being operated by Christine Peebles was struck by an uninsured motorist. The second accident occurred on May 27, 1992, when Christine Peebles's automobile was struck by an insured vehicle, being driven by David Truszcienski ("tortfeasor"). At all times relevant to the three accidents, Christine Peebles was insured under the same Nationwide automobile policy. That policy included uninsured and underinsured benefits of $50,000/$100,000.

In October 1993, the Peebles filed a suit for negligence against the drivers of the other vehicles in each of the three accidents. The Peebles also sued Nationwide for uninsured and underinsured benefits. On March 10, 1995, the Peebles and Nationwide entered into a stipulation to resolve the uninsured and underinsured claims through binding arbitration.

That binding arbitration was subject to several stipulated provisions. The parties agreed that the claims regarding the accidents with uninsured motorists in March 1992 and October 1992 "shall be subject to a maximum award of $50,000 for each accident." The third paragraph of the stipulation provided, with regard to the May 1992 accident involving the tortfeasor, that the claim "shall be subject to the maximum of $50,000. However, any amount awarded over $35,000 shall not be binding" and "either party may litigate in court the entitlement of the plaintiff to receive any amount awarded in excess of $35,000." This provision was added because Christine Peebles received the tortfeasor's policy limit of $15,000, as a result of the second accident. The parties also agreed that "if the arbitrator's [sic] are unable to apportion damages between the three accidents, then Nationwide shall satisfy the arbitrator's award by making three equal payments within the coverage limits of the three respective claims subject to the limitations set forth in paragraph three of the stipulation to arbitration."

---

1. Christine Peebles was accompanied during the third accident by the other plaintiff, her husband, Horace Peebles. Compensation for his injuries from that accident are not an issue in this appeal.

On August 24, 1995, the arbitration panel entered an award in favor of Christine Peebles in the amount of $165,000 for all three accidents. The panel concluded that her injuries were not apportionable. Nationwide paid Christine Peebles the $50,000 of maximum coverage per accident for each of the two collisions with uninsured drivers and $35,000 for the collision caused by the underinsured tortfeasor, i.e., $135,000 in total. Nationwide arrived at the $35,000 figure by deducting the $15,000 paid to Christine Peebles by the tortfeasor's insurance carrier from the $50,000 maximum per accident of her underinsured policy limits.

After the arbitration, the Peebles filed an amended complaint which added a seventh claim against Nationwide. That claim sought an additional $15,000 payment of underinsurance to Christine Peebles.

### Parties' Contentions
### Superior Court Holding

The Superior Court held that the amount of underinsured liability coverage to be paid is determined by setting off the money received from the tortfeasor against Carol Mayo's and Christine Peebles's respective total bodily injury damages and not against the limits of each applicable underinsured motorist policy. Accordingly, the parties agree that the sole and common legal issue on appeal is whether 18 *Del.C.* § 3902(b) requires the money received from a tortfeasor's liability policy to be deducted from the arbitration panel's total award of damages or from the limits of the claimant's underinsurance policy. The applicable standard of appellate review is *de novo* or plenary.

In both cases on appeal, Nationwide's policy provision for underinsured coverage provides that the underinsured motorist limit "will be reduced by any sums paid by or for any liable parties." Accordingly, Nationwide contends it is entitled to a credit against the underinsurance policy limits for the money paid on behalf of the tortfeasor. The plaintiffs argue that underinsured claims and the reduction permitted by Section 3902(b)(3) are controlled by this Court's holding in *Hurst v. Nationwide Mutual Insurance Co.*, Del. Supr., 652 A.2d 10 (1995). Thus, the plain-

tiffs submit that a tortfeasor's payment is to be set off against the claimant's total damages for bodily injury and that any provision in the underinsurance policy to the contrary is unenforceable. In response to that argument, Nationwide contends that this Court's holding in *Hurst* is distinguishable, because it related to the validity of a reducing clause for uninsured coverage rather than underinsured coverage.

### Kenner/Hurst
### Section 3902 Construed

This Court has closely examined the statutory intent and public policy of Section 3902(b) in two prior opinions. The first opinion to construe the statutory issue of set-offs in uninsured and underinsured coverage ("UM/UIM coverage") was *Aetna Casualty & Surety Co. v. Kenner*, Del.Supr., 570 A.2d 1172 (1990), an underinsured motorist case. In *Kenner*, the tortfeasor's liability limits totaled $100,000 and the plaintiffs' UM/UIM coverage equaled $300,000. *Id.* at 1173. The majority opinion in *Kenner* concluded that Section 3902(b) established both a floor and a ceiling for an insured's recovery when an accident involves an underinsured motorist. Therefore, the *Kenner* majority opinion held that Nationwide was permitted to deduct the $100,000 paid by the tortfeasor from the $300,000 limits of its UM/UIM coverage. *Id.* at 1176–77.

The operation of uninsured motorist coverage was decided in *Hurst v. Nationwide Mutual Insurance Co.*, Del.Supr., 652 A.2d 10 (1995). This Court noted, however, that "[t]he issue in the present case, whether payments 'by or for any liable parties' may be deducted from the Nationwide Policy limits, is the same issue that divided this Court in *Kenner.*" *Id.* at 13. Accordingly, in deciding the issue of uninsured coverage in *Hurst*, this Court re-examined its underinsured coverage holding in *Kenner*.

This Court concluded that the majority's decision in *Kenner* was "contrary to the express terms of Section 3902 and inconsistent with the other decisions of this Court." *Id.* at 15. Accordingly, this Court stated that a "careful re-examination of Section 3902 and other decisions of this Court leads us now to

adopt the construction of Section 3902 taken by the dissent in *Kenner*, even in the face of unambiguous policy language to the contrary." *Id.* at 13 (citing *State Farm Mut. Auto. Ins. Co. v. Washington*, Del.Supr., 641 A.2d 449 (1994); *Adams v. Delmarva Power & Light Co.*, Del.Supr., 575 A.2d 1103 (1990); *Frank v. Horizon Assurance Co.*, Del.Supr., 553 A.2d 1199 (1989)). Therefore, the Court in *Hurst* held that Section 3902(b) mandates that any reduction provided for by Section 3902(b)(3) must be deducted from the total amount of the insured claimant's bodily injuries and not from the limits of the insured claimant's *uninsured* coverage. *Id.* at 13–14. Consequently, to the extent *Kenner* was inconsistent with the majority opinion in *Hurst, Kenner* was overruled. *Id.* at 11, 15.

### Section 3902
### Underinsurance Coverage

The Superior Court correctly concluded that this Court's construction of Section 3902(b) in *Hurst* controlled the disposition of Mayo's and Peebles's underinsurance claims against Nationwide. The *ratio decidendi* of the majority opinion in *Hurst* concerning uninsured coverage is clearly applicable to underinsured coverage. Otherwise, it would have been unnecessary in *Hurst* to overrule the construction of Section 3902 in *Kenner*, which was an underinsurance case.

The logical operation of Section 3902(b) with regard to uninsurance, as described by this Court in *Hurst*, applies *a fortiori* to underinsurance coverage as that term is defined in subsection 3902(b)(2). *See Hurst v. Nationwide Mut. Ins. Co.*, Del.Supr., 652 A.2d 10 (1995). Once again, we begin our construction of the statute with the mandate in Section 3902(b) to extend an offer of uninsured motorist coverage to each insured in an amount not to exceed the limits of the insured's basic liability policy. That introductory statutory mandate is followed by a sentence which states that the offer of "[s]uch additional insurance shall include *underinsured bodily injury liability* coverage." 18 *Del.C.* § 3902(b) (emphasis added).

Section 3902(b)(1) then provides that, if the offer of additional coverage is accepted, it *shall* "pay for bodily injury damage that the insured ... [is] *legally entitled to recover* from the driver of an *underinsured* motor vehicle." (Emphasis added.) Section 3902(b)(2) defines an underinsured vehicle as one which has total insurance "applicable at the time of the accident ... less than the limits provided by the [insured's] uninsured motorist coverage." Finally, Section 3902(b)(3) provides that the underinsured motorist coverage insurer does not have to make any payment until the limits of all bodily injury insurance policies or bonds available to the insured have been exhausted. Nevertheless, when the underinsured policy is activated, it must respond in an amount up to its policy limits "for bodily injury damage that the insured or his legal representative are legally entitled to recover from the driver of an *underinsured* motor vehicle." 18 *Del.C.* § 3902(b)(1) (emphasis added).

Nationwide contends that Section 3902(b)(2) not only defines underinsurance but also sets a maximum ceiling on recovery at the limits of the underinsurance policy. Thus, Nationwide argues that it does not have to pay the limits of the underinsurance policies to Mayo and Peebles even though an underinsured driver caused each of them bodily injuries in excess of the limits in the underinsurance policies they purchased from Nationwide. That argument is completely contrary to the statutory mandate in Section 3902(b)(1) that requires underinsurance coverage for the purpose of paying "bodily injury damage that the insured or his legal representative are legally entitled to recover from the driver of an underinsured motor vehicle."

Nationwide's argument was adopted in *Kenner* but overruled in *Hurst*, when this Court concluded that *Kenner* had misconstrued Section 3902. The majority opinion in *Kenner* equated the limits of underinsurance which must be *offered* with the *operation* of those limits as a ceiling on underinsurance recovery. The majority opinion in *Hurst* concluded that such a construction defeated the General Assembly's avowed purpose of providing innocent Delaware motorists with an opportunity to protect themselves from impecunious tortfeasors. *Hurst v. Nationwide Mut. Ins. Co.*, 652 A.2d at 12.

*Kenner's* construction of Section 3902 permitted the insurance carrier to use the definition of underinsurance in Section 3902(b)(2) as more than a predicate for activating coverage. By construing Section 3902(b) to require Section 3902(b)(3)'s deductions to be made from the underinsurance policy limits rather than the insured's total bodily injuries, the otherwise innocuous definition of underinsurance in Section 3902(b)(2) becomes a sword to pierce the shield of mandatory insurance coverage in Section 3902(b)(1). Instead, Section 3902(b)(1) was intended to pay the claimant for bodily injury damage that the insured driver was entitled to recover from the driver of an underinsured vehicle, if full compensation for those injuries had not been received after the deductions required by Section 3902(b)(3).

The introductory section of Section 3902(b) correlates the offer of underinsurance with the limits of the insured's basic liability policy. Section 3902(b)(1), however, correlates the operation of that underinsurance coverage to the amount the insured is legally entitled to receive from the underinsured driver, after making the deductions for other coverage as required by Section 3902(b)(3). Section 3902(b)(2) simply defines underinsurance for the purpose of triggering that form of coverage. *Accord Allstate Ins. Co. v. Gillaspie,* Del.Super., 668 A.2d 757 (1995), *aff'd,* Del.Supr., No. 327, 1995, Hartnett, J., 1996 WL 21056 (Jan. 10, 1996) (ORDER).[2] Accordingly, we hold that Section 3902(b) mandates that any reduction provided for by

Section 3902(b)(3) must be deducted from the total amount of the insured claimant's bodily injuries and not from the limits of the insured claimant's underinsurance coverage.[3] The contrary provisions in the Nationwide policies issued to Mayo and Peebles are violative of the statutory mandate and unenforceable.

### Conclusion

The judgments of the Superior Court are affirmed.

WALSH, Justice, with whom HARTNETT, Justice, joins, dissenting:

The majority has construed 18 *Del.C.* § 3902(b) as imposing on each policy providing underinsured motorist coverage a requirement that it offset the limits of such coverage against the total damages sustained by an uninsured, notwithstanding the amount of liability insurance carried by a tortfeasor. Because I believe this approach is not supported by the language of the statute, read in its entirety, and is contrary to the "mirror image" concept evolved in our earlier cases, I respectfully dissent.

In construing a statute, a court should attempt to read the statute in its entirety and harmonize its constituent parts. *E.I. DuPont De Nemours & Co. v. Clark,* Del. Supr., 88 A.2d 436, 438 (1952). In *Hurst v. Nationwide Mutual Insurance Co.,* Del. Supr., 652 A.2d 10 (1995), the majority permitted a set off of the insured's uninsured motorist coverage against the total amount of

---

**2.** Although *Gillaspie* is factually distinguishable from the cases *sub judice* and from *Hurst,* its holding is consistent with this opinion. The statute defines an underinsured driver as a tortfeasor with liability policy limits that are less than the insured's uninsured motorist coverage. 18 *Del.C.* § 3902(b)(2). Unlike *Hurst, Mayo,* and *Peebles,* the limits of Gillaspie's uninsured coverage were equal to the tortfeasor's liability limits. In *Gillaspie,* the Superior Court held that because the tortfeasor's liability coverage was not less than Gillaspie's uninsured motorist coverage, Gillaspie did not meet the unambiguous statutory definition of being injured by an "underinsured" driver. *Gillaspie,* 668 A.2d at 762–63. Therefore, the Superior Court concluded that it was not required to apply this Court's holding in *Hurst* to Gillaspie's underinsurance claim. *Id.* This Court affirmed that judgment. In this opinion, we again hold that the presenta-

tion of record evidence which comports with the unambiguous definition in Section 3902(b)(2) is a condition precedent to pursuing an underinsurance claim. *See id.*

**3.** The *Peebles* case on appeal was decided by the same Superior Court jurist who decided *Gillaspie.* In *Peebles,* however, the limits of the tortfeasor's liability coverage are less than "the limits provided by [Peebles's] uninsured motorist coverage." 18 *Del.C.* § 3902(b)(2). Accordingly, the Superior Court held that disparity between Peebles's coverage and the tortfeasor's limits triggered the statutory definition of underinsurance in Section 3902(b)(2). The Superior Court further held that this Court's construction of Section 3902(b)(1) and (b)(3) in *Hurst,* with regard to uninsurance coverage, was applicable to Peebles's proper claim for underinsurance coverage. This opinion affirms that judgment.

damages sustained but did so by construing 18 *Del.C.* § 3902(b)(3) in the light of section 3902(b)(1)'s general language requiring payment "for bodily injury damage that the insured [is] entitled to recover from the driver of an underinsured motor vehicle." In *Hurst* the majority made no reference to section 3902(b)(2), the provision which controls the coverage issue in these cases. This is understandable since *Hurst* involved the application of the proceeds of *uninsured* coverage not *underinsured* coverage. In *Hurst* the majority rejected the "mirror image" with respect to section 3902(b)(1). It now extends that rejection to section 3902(b)(2).

My principal difficulty with the majority holding is that it does not accord significance to the only language in section 3902 which defines underinsured coverage. Apart from section 3902(b)(2) the other references to the term "underinsured" which appear in section 3902(b) shed little light on what the term itself means. The definitional section, (section 3902(b)(2)) however, is clear on its face:

(2) An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident total *less than the limits provided by the uninsured motorist coverage.* These limits shall be stated in the declaration sheet of the policy. (emphasis added)

The majority opinion has, in effect, rewritten this subsection to define underinsured coverage as meaning tortfeasor liability coverage which is "less than the amount of damages sustained by the insured."

Section 3902(b)(2), by its express language, is illustrative of the type of underinsured motorists coverage which provides "gap" or reduction coverage, *i.e.,* coverage for the difference between the limits of uninsured/underinsured coverage and the amount of the tortfeasor's available liability coverage. *See Connolly v. Royal Globe Insurance Co.,* Me. Supr., 455 A.2d 932, 936 (1983) (construing identical language under the Maine statute to require recovery of the amount the insured would have received "had the tortfeasor been insured to the same extent as the injured

party"). The effect of the majority ruling is to convert section 3902(b)(2) into an "excess" statute, *i.e.,* an underinsured motor vehicle is one for which available liability coverage is less than the dollar value of the injuries suffered by the insured. *See Elovich v. Nationwide Ins. Co.,* 104 Wash.2d 543, 707 P.2d 1319 (1985) (construing statute which defined "underinsured motor vehicle" as one having limits of liability which "is less than the applicable damages which the covered person is legally entitled to recover").

"Gap" coverage is of course consistent with the mirror image which the majority now apparently discards. As I noted in my dissent in *Hurst,* I have no quarrel with the policy of full compensation of persons who suffer damages in motor vehicle accidents. If the General Assembly had adopted an excess form of underinsured motorist coverage, as construed in *Elovich* and adopted by the legislatures of several states, the entitlement to have damages set off by the full amount of underinsured coverage would be indisputable. But the language chosen by our General Assembly conveys the opposite intention in express terms and there is no need to have recourse to other portions of section 3902(b) to determine that intent.

Finally, the majority opinion creates an inconsistency between another decision of the Superior Court, recently affirmed by a panel of this Court, which construed section 3902(b)(2). In *Allstate Insurance Co. v. Gillaspie,* Del.Super., 668 A.2d 757 (1995), *aff'd,* Del.Supr., No. 327, 1995, Hartnett, J., 1996 WL 21056 (Jan. 10, 1996) (ORDER), the Superior Court was confronted with a situation in which an insured with $15,000 of underinsured motorist's coverage recovered $15,000, the policy limits of a tortfeasor's liability coverage. Because his damages exceeded $15,000, the insured, relying upon *Hurst,* sought to have his own underinsured coverage applied against the excess of his damages. In rejecting this argument, the Superior Court ruled that since the uninsured/underinsured coverage limits and the amount of available liability insurance coverage was equal there was no entitlement to any underinsured payments because the tortfeasor was not underinsured despite the fact

that the insured's total damages remain unsatisfied. While acknowledging that a liberal interpretation of section 3902(b)(2) might be desirable in order to achieve "full compensation" the Superior Court did not believe it was free to ignore the express language of the statute. *Gillaspie,* 668 A.2d at 763. Our approval of *Gillaspie* as "well reasoned" cannot be squared with the result reached by the majority in this case.

The majority's effort to distinguish *Gillaspie* through a literal application of the "less than the limits" language of Section 3902(b)(2) is not convincing. The clear thrust of the majority opinion is to subordinate the application of Section 3902(b)(2) to the supposed command of Section 3902(b)(1), as described by the majority, that "when the underinsured policy is activated, it must respond in an amount up to the policy limits" for bodily injury damage. Logically, if the controlling standard for payment is the extent of underinsured coverage as measured against damages, the definition of underinsurance, and the amount of such coverage, is inconsequential.

This Court has struggled for many years with the language of Section 3902(b) and our shifting consensus has provided little guidance to the bar or the trial courts. Our differences have resulted from disagreements, honestly held, over the meaning of a statute which is arguably ambiguous. It would be a great benefit to the public who purchase underinsured coverage and sustain losses at the hands of underinsured tortfeasors, if the General Assembly were to restate in clear and unmistakable language the extent to which uninsured/underinsured coverage is payable in situations where the insured receives payment from tortfeasors and collateral sources.