COLONIAL INSURANCE COMPANY OF WISCONSIN and GEICO Indemnity Insurance Company, Defendants Below, Appellants,

v.

Willie M. AYERS, Guardian of Kanika Wright, a minor, Plaintiffs Below, Appellees.

Hartford Underwriters Insurance Company and Nationwide Mutual Insurance Company, Defendants Below, Appellants,

v.

Jerry F. Foskey, Personal Representative of Florence Foskey, Deceased, Plaintiffs Below, Appellees.

Nos. 92, 2000, 121, 2000, 127, 2000, 128, 2000, 134, 2000, 135, 2000.

Supreme Court of Delaware.

Submitted: Jan. 30, 2001.

Decided: April 27, 2001.

**178**

Donald J. Detweiler, Esquire (argued) and Mary Anne McLane, Esquire, of Welch & White, P.A., Ian Connor Bifferato, Esquire (argued), of Bifferato, Bifferato & Gentilotti, Wilmington, Delaware, Wilmington, and Robert J. Leoni, Esquire of Morgan, Shelsby & Leoni, Newark, Delaware, for appellants.

H. Clay Davis, III, Esquire (argued), Georgetown, Delaware, and James J. Woods, Jr., Esquire (argued), of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, for appellees.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices (constituting the Court en Banc).

HOLLAND, Justice, for the majority:

For purposes of summary judgment only, the Superior Court consolidated *Colonial Ins. Co. v. Ayers*, C.A. No. 99C–05–009, with *Hartford Underwriters Insurance Company v. Foskey*, C.A. No. 99C–08–002. Both cases involve similar legal issues relating to different insurance company defendants. The parties stipulated to the facts. The Superior Court granted the plaintiffs' motions for summary judgment. This Court accepted separate interlocutory appeals by the insurance company defendants and consolidated these proceedings.

The threshold issue in both cases is whether a passenger in a motor vehicle involved in a personal injury accident may "stack" the underinsured motorist coverage (UIM) provided by the policy insuring the vehicle onto the passenger's individual underinsured motorist policy(ies) to determine if the tortfeasor's motor vehicle is underinsured. The unreported decisions by the Superior Court on that issue are in conflict.[1] In these consolidated cases, the Superior Court determined that stacking of UIM coverage, for purposes of establishing the tortfeasor's status as underinsured motorist, is allowable.

■ We hold that the Delaware statute precludes the stacking of UIM coverages for purposes of the threshold inquiry into whether the UIM coverage is triggered. Accordingly, the judgments of the Superior Court must be reversed.

### *Ayers' Stipulated Facts*

The plaintiff in the first cause of action is Willie M. Ayers, guardian of Kanika Wright ("Kanika"), a minor. On June 20, 1998, Kanika was a passenger in a car involved in a one-car accident. Lynette Ayers was driving the car and is the al-

---

1. *Compare Hubbs v. Liberty Mut. Ins. Co.*, Del.Super., C.A. No. 98C–090162, 1998 WL 960749, Herlihy, J. (Dec. 11, 1998) (Mem.Op.) *with Justice v. Colonial Ins. Co.*, Del.Super., C.A. No. 97C–05–028, 1998 WL 442717, Ridgely, J. (June 30, 1998). In *Hubbs,* the Superior Court concluded the UIM coverage may not be stacked for purposes of determining underinsured status, because to do so would contravene the clear language and intent of the underinsurance statute. Conversely, in *Justice,* the Superior Court held that a claimant may stack coverages from separate policies (which when viewed independently did not exceed the tortfeasor's liability coverage and therefore were not triggered) in order to establish the tortfeasor's status as an underinsured motorist.

leged tortfeasor. The tortfeasor's car was covered by insurance issued by GEICO. The liability policy limits of $15,000 have been paid to Kanika by GEICO. The plaintiff contends that GEICO also provided $15,000 of underinsurance coverage to Kanika as a passenger in the car. Colonial insured Kanika as a member of the household of her mother by a policy with UIM coverage of $15,000. Colonial also insured Kanika as a member of her stepfather's household by a policy with UIM coverage of $15,000. Willie Ayers acknowledges that Kanika can look to only one of the Colonial policies for UIM coverage.[2]

William Ayers argues that, since GEICO provided $15,000 of UIM coverage to Kanika, she is entitled to add or stack that UIM coverage to the UIM coverage provided by Colonial. The stacked UIM coverage totals $30,000. Since the tortfeasor's GEICO liability coverage was $15,000, the plaintiff maintains that the tortfeasor's vehicle is underinsured. Accordingly, Willie Ayers seeks a declaratory judgment that Kanika is entitled to underinsured coverage.

### Foskey's Stipulated Facts

The plaintiff in the second cause of action is Jerry F. Foskey, the duly appointed Administrator of the Estate of Florence Foskey. On March 21, 1999, Florence Foskey was a passenger in a vehicle owned and operated by Dorothy Riggin when a collision between Riggin's vehicle and a vehicle driven by Kimberly Elliott occurred. Florence Foskey died as a result of the accident.

Nationwide insured Riggin's vehicle. The Riggin's policy provided for UIM coverage of $100,000 per person. Florence Foskey carried insurance coverage issued by Hartford Underwriters Insurance Company. The UIM coverage in the Hartford policy had a limit of $100,000.

Jerry Foskey maintains that he can stack the Hartford UIM coverage of $100,000 with the UIM coverage of $100,000 on the Riggins' vehicle in which Florence Foskey was a passenger for a total of $200,000. When he does so, the vehicle in which Florence Foskey was a passenger is underinsured. Jerry Foskey contends that he is entitled to the UIM coverage of both policies.

### Standard of Review

■ In these consolidated proceedings, the Superior Court was required to construe the Delaware underinsured motorist statute. Judicial construction of a statute is a determination of law, and the appropriate standard of appellate review is *de novo*.[3] Therefore, this Court must determine whether the Superior Court "erred in formulating or applying legal precepts."[4]

### Triggering UIM Coverage

■ The determination of whether UIM coverage is triggered is made in accordance with the statutory definition of an underinsurance motor vehicle, 18 *Del. C.* § 3902(b)(2)[5]:

2. *See* 18 *Del. C.* § 3902(c); *Johnson v. Colonial Ins. Co. of California*, Del.Super., C.A. No. 95C–05–189, 1997 WL 126994, Herlihy, J. (Jan. 7, 1997).

3. *State Farm Mut. Auto. Ins. Co. v. Clarendon Nat. Ins. Co.*, Del.Supr., 604 A.2d 384, 387 (1992).

4. *Id.* (quoting *Hudson v. State Farm Mut. Ins. Co.*, Del.Supr., 569 A.2d 1168, 1170 (1990)).

5. In *Peebles* and *Williams*, this Court construed (b)(2). *Nationwide Mut. Auto. Ins. Co. v. Peebles*, Del.Supr., 688 A.2d 1374, 1377–78 (1997); *Nationwide Mut. Ins. Co. v. Williams*, Del.Supr., 695 A.2d 1124 (1997). In *Hurst*, this Court construed subsections (b)(1) and

An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident total less than the limits provided by the uninsured motorist coverage. These limits shall be stated in the declaration sheet of the policy.

The language of Section 3902(b)(2) is unambiguous.[6] A motorist is underinsured if "the limits of bodily injury *liability coverage* under *all* bonds and insurance policies applicable at the time of the accident *total* less than the limits provided by the *uninsured motorist coverage* ... [as] stated in the declaration sheet of the *policy*." (emphasis added).

This Court has held that the calculation of the total amount of UIM coverage available is separate and distinct from the determination of whether the UIM coverage of a specific individual policy is triggered.[7] In *Peebles*, we stated, "that presentation of record evidence which comports with the unambiguous definition in Section 3902(b)(2) is a condition precedent to pursuing an underinsurance claim."[8] "This determination affects the right of the UIM insured to any payments under those coverages, as opposed to the more common stacking issue which determines the

amount of recovery under UM or UIM provisions."[9] Accordingly, this Court held that UIM coverage is triggered or available only after a claimant establishes the status of the tortfeasor as underinsured pursuant to subsection (b)(2).[10]

In *Williams*, we held that "[t]he focus of the unambiguous definition of underinsurance in Section 3902(b) is on the symmetry between the *limits* of the claimant's [UIM] coverage and the *limits* of the tortfeasor's coverage."[11] In *Williams*, the limits of the tortfeasor's liability coverage were identical to the limits of the claimants underinsured motorist coverage.[12] Accordingly, in *Williams*, we held that the tortfeasor was not an "underinsured" motorist within the meaning of Section 3902(b)(2).[13] In *Williams*, only a single underinsurance policy was at issue.

### Predicate UIM Stacking Prohibited

The issue of first impression presented to this Court is whether it is permissible to stack multiple UIM coverages for the threshold purpose of establishing whether the tortfeasor is an underinsured motorist. Section 3902(b)(2) authorizes the stacking of total liability coverage "under all bonds and insurance *policies*."[14] The amount of that combined liability coverage is then compared to the amount of UIM coverage

---

(b)(3). *Hurst v. Nationwide Mut. Ins. Co.*, Del.Supr., 652 A.2d 10 (1995).

6. *Nationwide Mut. Auto. Ins. Co. v. Peebles*, 688 A.2d at 1378 n. 2.

7. *Id.* at 1378.

8. *Id.* at 1378 n. 2 (citing *Allstate Ins. Co. v. Gillaspie*, Del.Super., 668 A.2d 757, 762–63 (1995), *aff'd*, Del.Supr., No. 327, 1995, 1996 WL 21056, Hartnett, J. (ORDER), 676 A.2d 903 (Jan. 10, 1996)).

9. *Couch on Insurance 3d*, § 169:20 at 169–46.

10. *Nationwide Mut. Auto. Ins. Co. v. Peebles*, 688 A.2d at 1378; *Nationwide Mut. Ins. Co. v.*

*Williams*, 695 A.2d at 1126 ("[T]he definition of underinsurance in Section 3902(b)(2) operates as a prerequisite to a right of recovery from the claimant's underinsurance motorist policy.").

11. *Nationwide Mut. Ins. Co. v. Williams*, Del. Supr., 695 A.2d 1124, 1127 (1997).

12. *Id.* at 1125.

13. *Id.* at 1127.

14. 18 *Del. C.* § 3902(b)(2).

"stated in the declaration sheet of *the policy.*"[15] Thus, in order to determine whether a tortfeasor is "underinsured" the statute requires that a comparison be made between the total of all liability insurance policies available on behalf of the tortfeasor and the limits of each particular underinsured motorist policy that the policyholder is attempting to access.

The plaintiffs argue that the term "the declaration sheet of the policy" refers to all underinsured policies that are potentially applicable.[16] The General Assembly, however, used the plural term "policies" to describe the liability coverage that is to be considered but simultaneously used the singular term "policy" to characterize the underinsurance coverage to which the liability coverage was to be compared. Moreover, with regard to "bodily injury liability coverage," the statute uses not only the plural "policies," but also employs the words "all" and "total" to indicate that liability coverage must be considered in the aggregate. The omission of the terms "all" and "total" in reference to UIM coverage, in conjunction with the use of the singular word "policy", reflects a concerted decision by the legislature to have each underinsured motorist policy considered separately *vis-à-vis* all liability policies.

■ It is a well-established principle of statutory construction that the General Assembly "is presumed to have inserted every provision into a legislative enactment for some useful purpose and construction, and when different terms are used in various parts of a statute, it is reasonable to assume that a distinction between the terms was intended."[17] The unambiguous language of the statute demonstrates that term "the declaration sheet of the policy" in Section 3902(b)(2) refers to each single UIM policy under consideration. Accordingly, we hold that the Delaware statute precludes the stacking of UIM coverages for purposes of the threshold inquiry into whether the underinsured motorist coverage provided by any one UIM policy is triggered.

### *Conclusion*

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

BERGER, J., Dissenting:

This Court has repeatedly held that the purpose of § 3902 is to "[protect] innocent persons from the negligence of unknown or impecunious tortfeasors."[18] Protection means compensation, and the goal of fully compensating innocent persons "has been applied by our courts in construing the uninsured motorist laws."[19] The majority

---

**15.** 18 *Del. C.* § 3902(b)(2).

**16.** The appellees assert that the Maine UIM statute is "sufficiently close to Delaware's laws" that Maine's interpretation of its statute constitutes persuasive authority for Delaware's courts. We disagree. The Maine underinsurance statute interpreted in *Connolly v. Royal Globe Ins. Co.,* Me.Supr., 455 A.2d 932 (1983), is substantially different from the Delaware UIM statute at issue. Consequently, *Connolly* provides no guidance to this Court with respect to interpretation of the Delaware definition of underinsurance.

**17.** *General Motors Corp. v. Burgess,* Del.Supr., 545 A.2d 1186, 1191 (1988) (quoting *C & T Assocs., Inc. v. New Castle County,* Del. Ch., 408 A.2d 27, 29 (1979)).

**18.** *Frank v. Horizon Assur. Co,* Del.Supr., 553 A.2d 1199, 1201 (1989). *See also State Farm Mut. Auto. Ins. Co. v. Arms,* Del.Supr., 477 A.2d 1060 (1984); *Hurst v. Nationwide Mut. Ins. Co.,* Del.Supr., 652 A.2d 10 (1995); *Nationwide Mut. Auto. Ins. Co. v. Peebles.* Del. Supr., 688 A.2d 1374 (1997).

**19.** *State Farm Mut. Auto. Ins. Co. v. Arms,* 477 A.2d at 1064.

does not mention, and apparently does not consider, this overriding legislative policy in analyzing the meaning of § 3902. Instead, it·says that the statute is unambiguous and that it plainly precludes stacking of UIM coverage for purposes of determining whether the underinsured motorist coverage provided by any one policy is triggered.

The majority's premise—that the statute is unambiguous—does not bear scrutiny. It ignores the precedents from this Court, which demonstrate by their lack of unanimity that this statute is susceptible of more than one reasonable interpretation. Indeed, in one of the more recent realignments of the majority and dissenters, two justices noted:

> This Court has struggled for many years with the language of Section 3902(b) and our shifting consensus has provided little guidance to the bar or the trial courts. Our differences have resulted from disagreements, honestly held, over the meaning of a statute that is arguably ambiguous.[20]

In deciding whether § 3902(b)(2) is ambiguous, it is not enough to parse the language of that subsection. The entire statute must be considered.[21] This Court has held, focusing on § 3902(c), "that Section 3902 permits stacking the policy limits of uninsured coverage in the absence of an express prohibition...."[22] There is no express prohibition in § 3902(b)(2), yet the majority interprets that subsection as prohibiting stacking. An equally plausible interpretation, and one that is consistent with the overall purpose of the statute, is that § 3902(b)(2) does not address stacking at all. Under this view, the general rule allowing stacking absent an express prohibition would control.

Section 3902(b)(2) defines "underinsured motor vehicle" as one for which the limits of all liability coverage total less than the limits of "the uninsured motorist coverage." In a separate sentence, the statute then requires insurers to state the limits of the underinsured coverage in the declaration sheet for the insurance policy. The question is whether, by using the term "the uninsured motorist coverage" instead of, for example, "*all* the uninsured motorist coverage," the legislature intended to prohibit stacking. The answer to that question cannot be gleaned from the plain meaning of the language itself, which is why there are rules of statutory construction. The primary rule is that statutes should be interpreted to give effect to the intent of the legislature.[23] Applying that rule, § 3902(b)(2) should be construed as permitting stacking.

I would affirm the Superior Court and, accordingly, I dissent.

**20.** *Nationwide Mut. Auto. Ins. Co. v. Peebles,* 688 A.2d at 1380.

**21.** *Spielberg v. State,* Del.Supr., 558 A.2d 291 (1989).

**22.** *Hurst v. Nationwide Mut. Ins. Co.,* 652 A.2d at 14.

**23.** *Ingram v. Thorpe,* Del.Supr., 747 A.2d 545, 547 (2000).