Thomas E. DEPTULA, Plaintiff Below, Appellant,

v.

HORACE MANN INSURANCE COMPANY, Defendant Below, Appellee.

No. 362,2002.

Supreme Court of Delaware.

Submitted: Oct. 27, 2003.
Decided: Feb. 13, 2004.

Joseph J. Rhoades, Esquire (argued), and W. Christopher Componovo, Esquire, of the Law Offices of Joseph J. Rhoades, Wilmington, Delaware, for Appellant.

Richard W. Pell, Esquire (argued) and Gregory R. Babowal, Esquire, of Tybout, Redfearn and Pell, Wilmington, Delaware, for Appellee.

Gary S. Nitsche, Esquire (argued), of Weik, Nitsche & Dougherty, Wilmington, Delaware, for Amicus Curiae, Delaware Trial Lawyers Association.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the Court en Banc.

BERGER, Justice.

In this appeal, we consider whether a claimant may recover under two underinsured motorist policies if one of those policies establishes that the tortfeasor's automobile is an "underinsured motor vehicle," as defined by statute. To qualify as an underinsured motor vehicle, the limits of bodily injury coverage available to the tortfeasor must be less than the limits provided by the claimant's underinsured motorist (UIM) coverage. In *Colonial*

*Ins. Co. of Wisconsin v. Ayers,*[1] this Court addressed the threshold question of whether a claimant may stack the coverage provided by multiple policies in order to establish that the tortfeasor's vehicle is underinsured. The *Ayers* court held that stacking is not permitted to trigger UIM coverage. This appeal presents the next question—whether stacking is permitted *after* one of the claimant's policies triggers UIM coverage, for purposes of determining the extent or amount of that coverage. Given the legislative purpose to fully compensate victims for the damages inflicted by impecunious tortfeasors, we hold that stacking is permitted once the statutory threshold for UIM coverage has been satisfied by any one policy.

### Factual and Procedural Background

In 1994, Thomas Deptula was severely injured in a motor vehicle accident. Deptula was driving a vehicle owned by his employer, Keen Compressed Gas, when Constance Carty's automobile rear-ended him, causing serious neck injuries. Carty's insurance policy provided $100,000 bodily injury liability coverage. Keen's policy provided $300,000 UIM coverage. Deptula's personal policy, issued by Horace Mann Insurance Company, provided $100,000 UIM coverage.

After filing suit against Carty, Deptula accepted the $100,000 policy limits of her liability coverage in settlement of his claims against her. Deptula also sought and received the $300,000 policy limits of Keen's UIM coverage. In an effort to receive full compensation for his injuries, Deptula filed a declaratory judgment and personal injury claim against Horace Mann, seeking the $100,000 policy limits of

his UIM coverage. The Superior Court granted summary judgment to Horace Mann, holding that, since Horace Mann's UIM coverage did not exceed Carty's liability coverage, Carty's vehicle was not underinsured for purposes of triggering the Horace Mann UIM coverage.

### Discussion

 Over the years, this Court has struggled with the language of 18 Del.C. § 3902, the statute governing uninsured and underinsured motor vehicle coverage. We have attempted to follow the plain meaning of the unambiguous portions of the statute, and to interpret those portions that are ambiguous in a manner that gives effect to the legislative purpose of protecting people injured by tortfeasors carrying little or no insurance. Because of the difficulty in parsing this statute and applying it in different fact patterns, our decisions have spawned a larger than usual number of dissents and reversals. We would prefer to be able to provide clear and consistent direction to the trial courts and litigators, but courts cannot usurp the legislative function by rewriting the statute. Thus, we address only the narrow issue presented by Deptula, and leave for the General Assembly the task of clarifying the broader questions about the scope of UIM coverage available to Delaware residents[2].

Section 3902(b) provides, in relevant part:

> (b) Every insurer shall offer to the insured the option to purchase additional coverage for personal injury or death up to a limit of $100,000 per person and $300,000 per accident or $300,000 single limit, but not to exceed the limits for

---

1. 772 A.2d 177 (Del.2001).

2. *See:* Norm Shapero, *Under–Insured Motor Vehicle Coverage in Delaware: Resolving a 20*

*Year Old Conflict,* 6 Del. L.Rev. 93 (2003), for a thoughtful and comprehensive analysis of the issues presented by the UIM statute.

bodily injury liability set forth in the basic policy. Such additional insurance shall include underinsured bodily injury liability coverage.

(1) Acceptance of such additional coverage shall operate to amend the policy's uninsured coverage to pay for bodily injury damage that the insured or his/her legal representative are legally entitled to recover from the driver of an underinsured motor vehicle.

(2) An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability under all bonds and insurance policies applicable at the time of the accident total less than the limits provided by the uninsured motorist coverage. These limits shall be stated in the declaration sheet of the policy.

(3) The insurer shall not be obligated to make any payment under this coverage until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement or judgments. . . .

Our analysis of Deptula's claim begins with *Hurst v. Nationwide Mut. Ins. Co.*[3] In that case, Hurst was injured while driving her employer's vehicle during the course of her employment. The tortfeasor had no insurance. Hurst's employer had a policy that included $40,000 in uninsured motorist (UM) coverage, and Hurst's own policy, issued by Nationwide Mutual Insurance Company, provided $50,000 in UM coverage. The Nationwide policy provid-

ed, however, that its coverage would be reduced by any amounts paid by or for liable parties. As a result, Nationwide was willing to pay only $10,000 on its $50,000 UM policy, since Hurst's employer's UM policy had paid $40,000.

The *Hurst* court noted the overriding legislative intent to fully compensate innocent drivers, citing cases dating back to 1978, and reaffirmed that "Section 3902 permits stacking the policy limits of uninsured coverage in the absence of an express prohibition."[4] Because Nationwide's reducing provision would have prevented Hurst from stacking her insurance coverage, the Court held that the provision was void, as contrary to the express language of § 3902(b)(1) and (3). Any set-off for payments made on behalf of the tortfeasor must be a set-off against actual damages, not policy limits.[5]

The recent decision in *Colonial Ins. Co. of Wisconsin v. Ayers,*[6] could be viewed as a retreat from the pro-stacking approach endorsed in *Hurst* and the cases cited therein. The issue in *Ayers* was whether a passenger involved in an accident "may 'stack' the underinsured motorist coverage (UIM) provided by the policy insuring the vehicle onto the passenger's individual underinsured motorist policy(ies) to determine if the tortfeasor's motor vehicle is underinsured."[7] Because none of the policies in question provided UIM coverage in an amount exceeding the tortfeasor's liability coverage, the *Ayers* court held that the tortfeasor's vehicle did not meet the statutory definition of an underinsured motor

---

**3.** 652 A.2d 10 (Del.1995).

**4.** 652 A.2d at 14.

**5.** Two years after *Hurst,* this Court applied the same reasoning to cases involving UIM

coverage. *See: Nationwide Mut. Auto. Ins. Co. v. Peebles,* 688 A.2d 1374 (Del.1997).

**6.** 772 A.2d 177.

**7.** *Id.* at 178.

vehicle. As a result, UIM coverage was not triggered.

The *Ayers* decision differentiated between the calculation of the total UIM coverage available and the determination of whether UIM coverage was triggered.[8] It decided only the threshold question of whether UIM coverage was triggered. Thus, the *Ayers* court left open the question, presented here, of whether stacking is permitted after one policy triggers UIM coverage. Following the principles announced in *Hurst*, since nothing in the statute prohibits stacking, and stacking enables innocent claimants to be more fully compensated for their injuries, we hold that stacking to determine the extent or amount of UIM coverage is permitted after one UIM policy establishes that the tortfeasor was driving an "underinsured motor vehicle."[9] This conclusion gives effect to legislative intent and is consistent with general insurance law.[10]

### Conclusion

Based on the foregoing, the judgment of the Superior Court is reversed, and this matter is remanded for further action in accordance with this opinion. Jurisdiction is not retained.

---

**8.** *Id.* at 180.

**9.** § 3902(b)(2).

**10.** Couch on Insurance, § 169:19 (3rd Ed.)