# IN THE SUPERIOR COURT

# OF THE STATE OF DELAWARE

SHANNON MOFFITT-ALI,      )
        )
      Plaintiff,      )
        )
      v.      )      C.A. No. N14C-04-117 WCC
        )
STATE FARM MUTUAL      )
AUTOMOBILE INSURANCE      )
COMPANY, a foreign corporation,      )
and JOVANNA Y. MOFFITT-ALI,      )
        )
      Defendants.      )

Submitted: January 13, 2016
Decided: March 31, 2016

**Defendant State Farm's Motion for Summary Judgment --GRANTED**

**MEMORANDUM OPINION**

Gary S. Nitsche, Esquire, Eileen M. McGivney, Esquire, Weik, Nitsche & Dougherty, 305 N. Union Street, P.O. Box 2324, Wilmington, DE 19899. Attorneys for Plaintiff.

Matthew E. O'Byrne, Esquire, Brian V. Demott, Esquire, Casarino Christman Shalk Ransom & Doss, P.A., 405 N. King Street, Suite 300, P.O. Box 1276, Wilmington, DE 19899. Attorneys for Defendant State Farm.

**CARPENTER, J.**

Presently before the Court is Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion for Summary Judgment. For the following reasons, State Farm's Motion will be GRANTED.

**FACTS**

Underlying this Motion is Shannon Moffitt-Ali's ("Plaintiff") claim for underinsured motorist ("UIM") coverage relating to injuries she sustained in a motor vehicle collision on December 2, 2012.[1] At the time of the accident, Plaintiff was a passenger in a vehicle operated by her step-daughter, Javonna Moffitt-Ali ("Defendant Moffitt-Ali").[2] Defendant Moffitt-Ali was driving westbound on Delaware Route 4 at the same time Rachel Reaume ("Reaume") was traveling eastbound when the two vehicles collided.[3] The collision allegedly occurred as a result of both drivers' negligence.[4]

At the time of the accident, Reaume's vehicle was insured by State Farm with a liability coverage limit of $25,000.[5] Defendant Moffitt-Ali was operating a vehicle owned by Troy B. Moffitt-Ali and insured by a Liberty Mutual Insurance Company ("Liberty Mutual") policy with liability coverage limits of $100,000, as

---

[1] Pl. Am. Compl. ¶ 14.
[2] *Id*. ¶ 5.
[3] *Id*. ¶ 6.
[4] *Id*. ¶¶ 6-8. *See also* Pl. Resp. to Def. Mot. for Summ. J. ¶ 1 ("Liability was contested between Defendant Moffitt-Ali and Ms. Reaume.").
[5] Pl. Am. Compl. ¶ 10.

well as UIM coverage of $100,000.[6] Plaintiff also had her own insurance policy through State Farm, which included UIM coverage of $25,000.[7]

Plaintiff's claim against Reaume was resolved in exchange for the $25,000 limits of her liability policy.[8] Plaintiff then filed the present case against Defendant Moffitt-Ali, Liberty Mutual, and State Farm on April 14, 2014.[9] Liberty Mutual has since tendered both the bodily injury liability and UIM policy limits.[10] On October 21, 2015, this Court signed a partial stipulation of dismissal with prejudice with respect to all claims against Liberty Mutual.[11]

Plaintiff now seeks secondary UIM coverage through her policy with State Farm.[12] State Farm filed the instant Motion for Summary Judgment on October 21, 2015. State Farm contends Plaintiff is not entitled to access her UIM coverage because the combined liability coverage of the tortfeasors in this matter, Reaume and Defendant Moffitt-Ali, exceeded Plaintiff's underinsured limits. Plaintiff argues that she remains entitled to access her UIM benefits because one of the tortfeasor's liability coverage was less making her underinsured as to that policy.

---

[6] Pl. Resp. to Def. Mot. for Summ. J. ¶ 2.
[7] *Id*.
[8] Pl. Am. Compl. ¶ 10.
[9] Plaintiff filed an Amended Complaint on September 2, 2014 to include the allegations against State Farm.
[10] Pl. Resp. to Def. Mot. for Summ. J. ¶ 3.
[11] D.I. 43.
[12] Pl. Resp. to Def. Mot. for Summ. J. ¶ 3.

The Court heard oral argument on December 4, 2015.  On January 13, 2016, the

Court signed an Order reflecting the parties' agreement to stipulated damages of

$25,000, the State Farm UIM policy limits, should Plaintiff's claim survive

summary judgment.  This is the Court's decision on the matter.

## STANDARD OF REVIEW

In reviewing a motion for summary judgment pursuant to Rule 56, the Court

must determine whether any genuine issues of material fact exist.[13]  Specifically,

the moving party bears the burden of showing that there are no genuine issues of

material fact so that he is entitled to judgment as a matter of law.[14]  Further, the

Court must view all factual inferences in a light most favorable to the non-moving

party.[15]  Therefore, summary judgment will not be granted if it appears that there is

a material fact in dispute or that further inquiry into the facts would be

appropriate.[16]

## DISCUSSION

Title 18, Section 3902 of the Delaware Code was enacted to provide

innocent victims of motor vehicle accidents a means of recovering for injuries

---

[13] Super. Ct. Civ. R. 56(c); *Wilm. Trust Co. v. Aetna*, 690 A.2d 914, 916 (Del. 1996).
[14] *Moore v. Sizemore*, 405 A.2d 679 (Del. 1979).
[15] *Alabi v. DHL Airways, Inc.*, 583 A.2d 1358, 1361 (Del. 1990).
[16] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. Super. 1962), *rev'd in part* on procedural grounds and *aff'd in part*, 208 A.2d 495 (Del. 1965).

"inflicted by impecunious tortfeasors."[17] The statute aims to achieve this objective

by permitting "a claim for UIM benefits where an operator of an *underinsured*

*motor vehicle* causes the claimant bodily injury."[18] The necessary first step in

seeking to collect UIM benefits, then, is to show that the tortfeasor was operating

an underinsured motor vehicle.[19] This threshold determination is governed by 18

*Del. C.* § 3902(b)(2), which, prior to its 2013 amendment, provided:

> An underinsured motor vehicle is one for which there may be bodily injury
> liability coverage in effect, but the limits of bodily injury liability coverage
> under all bonds and insurance policies applicable at the time of the accident
> total less than the limits provided by the uninsured motorist coverage. These
> limits shall be stated in the declaration sheet of the policy.[20]

This definition has since been amended to provide that a vehicle is underinsured if

the limits of all applicable policies "are less than the damages sustained by the

insured."[21] However, this language affects only those policies renewed or secured

---

[17] *See Deptula v. Horace Mann Ins. Co.,* 842 A.2d 1235, 1236 (Del. 2004). *See also Hurst v. Nationwide Mut. Ins. Co.*, 652 A.2d 10, 12 (Del. 1995) (citing *Frank v. Horizon Assur. Co.,* 553 A.2d 1199, 1201 (Del. 1989)).

[18] *See White v. Liberty Ins. Corp.*, 975 A.2d 786, 788 (Del. 2009) (emphasis added) (citing 18 Del. C. § 3902(b)(1)).

[19] *See id. See also Nationwide Mut. Ins. Co. v. Williams*, 695 A.2d 1124, 1126 (Del. 1997) ("[T]he definition of underinsurance in Section 3902(b)(2) operates as a prerequisite to a right of recovery from the claimant's underinsurance motorist policy." (citing *Nationwide Mut. Auto. Ins. Co. v. Peebles,* 688 A.2d at 1378)).

[20] 18 *Del. C.* § 3902(b)(2) (1995).

[21] 18 *Del. C.* § 3902(b)(2) (2013) ("An underinsured motor vehicle is one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident are less than the damages sustained by the insured. These limits shall be stated in the declaration sheet of the policy.").

after the amendment's July 3, 2013 effective date, which is not the case here.[22]

Accordingly, whether Plaintiff is entitled to UIM coverage will "depend[] upon the applicable policy limits."[23] In other words, an underinsured tortfeasor for present purposes is one "with liability policy *limits* that are less than the *limits* of the claimant's uninsured motorist coverage."[24]

In the context of this initial comparison, an injured claimant is permitted to look to the limits of "any one" applicable UIM policy.[25] While addressing a different, yet related, issue in *Colonial Insurance Co. of Wisconsin v. Ayers*, the Court held that a claimant is precluded from stacking UIM benefits "for purposes of the threshold inquiry into whether…[UIM] coverage provided by any one UIM policy is triggered."[26] While rejecting the construction asserted by the plaintiff there as contrary to the "unambiguous language of the statute," the Court's

---

[22] *See Lamanna v. Prime Ins. Co.,* 2013 WL 9769255, at *3 (Del. Super. Nov. 25, 2013) ("The amendment to § 3902(b)(2), effective July 3, 2013, did 'not affect existing insurance policies, and will apply only to renewing or new policies that become effective six (6) months after the law is enacted.'") (quoting 79 Del. Laws 2013, ch. 91, § 1)).

[23] *See White*, 975 A.2d at 789.

[24] *See Williams*, 695 A.2d at 1126 (emphasis in original).

[25] *See Garnett v. Liberty Mut. Fire Ins.*, 2006 WL 2441969, at *3 (Del. Super. Aug. 23, 2006) ("[A]n injured party is not limited to looking to the vehicle policy when determining the threshold question of whether they qualify for UIM coverage. The injured party may look to 'any one' policy to determine the threshold question of whether they qualify for UIM coverage, including their personal policy." (citing *Deptula,* 842 A.2d at 1236-38)).

[26] *See Colonial Ins. Co. of Wisconsin v. Ayers*, 772 A.2d 177, 181 (Del. 2001). *But see Deptula,* 842 A.2d at 1238 (holding "that stacking to determine the extent or amount of UIM coverage is permitted after one UIM policy establishes that the tortfeasor was driving an 'underinsured motor vehicle'").

comments as to the reading of § 3902 are helpful to a resolution of the issue presented in this litigation:

> The General Assembly…used the plural term "policies" to describe the liability coverage…to be considered but simultaneously used the singular term "policy" to characterize the [UIM] coverage to which [it]…was to be compared. Moreover, with regard to "bodily injury liability coverage," the statute…also employs the words "all" and "total" to indicate that liability coverage must be considered in the aggregate. The omission of the[se] terms…in reference to UIM coverage, in conjunction with…the singular word "policy," reflects a concerted decision by the legislature to have each [UIM] policy considered separately *vis-à-vis* all liability policies.[27]

Here, the parties appear to agree Plaintiff had two UIM policies available to her at the time of the accident: the Liberty Mutual policy with UIM coverage limits of $100,000 and the $25,000 limits of her personal UIM policy with State Farm. While the Plaintiff is presently seeking to recover under her State Farm policy, she is permitted to use the limits of "any one policy"—here, the $100,000 Liberty Mutual policy—for purposes of determining UIM eligibility.[28] The issue, however, is whether this amount must initially be compared against the *combined* liability coverage limits of both alleged tortfeasors.

In its Motion for Summary Judgment, State Farm argues the alleged tortfeasors, Reaume and Defendant Moffitt-Ali, were not "underinsured" because,

---

[27] *Ayers,* 772 A.2d at 181.
[28] *See Garnett*, 2006 WL 2441969, at *2-3 (emphasizing that the statute's legislative intent and Delaware case law make clear that "any one policy" may qualify an injured party as underinsured).

in total, their bodily injury liability limits equal $125,000.[29]  According to State Farm, the Court should consider this amount as representing "the limits of bodily injury liability under all bonds and insurance policies applicable at the time of the accident total" under § 3902(b)(2).[30]  Applying this construction, no underinsurance situation would exist because the bodily injury liability of $125,000 exceeds the $100,000 of UIM coverage under the Liberty Mutual policy.[31]

Plaintiff, on the other hand, responds that § 3902(b)(2) contemplates only a *single tortfeasor's* total liability coverage.[32]  Accordingly, Plaintiff argues Reaume operated an underinsured motor vehicle since her only liability coverage totaled $25,000, which is less than the Liberty Mutual UIM limits of $100,000.[33]  In support of her position, Plaintiff emphasizes that the statutory language requiring consideration of "total" liability coverage "modif[ies] the definition of a single entity," the underinsured motor vehicle.[34]  In other words, Plaintiff reads the provision, not as including multiple tortfeasor scenarios, but rather as illustrating that a single tortfeasor may have more than one liability policy.[35]

---

[29] Def. Mot. for Summ. J. ¶ 9.
[30] *See id.* (quoting § 3902(b)(2)).
[31] *See id.*
[32] Pl. Resp. to Def. Mot. for Summ. J. ¶ 5.
[33] *Id.* ¶ 9.
[34] *Id.* ¶ 7.
[35] *Id.*

State Farm's position finds support in Delaware case law. In *Sload v. Nationwide Mutual Insurance Co.*, the plaintiffs, passengers in a vehicle operated by George Sload, were injured when Sload collided with a vehicle operated by Dennis Lloyd Brown, Jr.[36] Both tortfeasors offered the limits of their bodily injury liability policies, with Sload's in the amount of $100,000 and Brown's in the amount of $15,000.[37] In considering whether the plaintiffs were entitled to access their UIM limits of $100,000, this Court held:

> Plaintiffs received, through the combined liability policy limits of Mr. Sload and Mr. Brown, a total of $115,000 per person. Plaintiffs' UIM limit is therefore less than the liability limits of both tortfeasors, Mr. Brown and Mr. Sload, combined and equal to the liability limits of the tortfeasor Mr. Sload, the driver of the vehicle in which Plaintiffs were riding. In either case, the total applicable liability limits are more than or equal to the UM/UIM limits, and thus, by definition, there is no "underinsured" motorist coverage available to Plaintiffs.[38]

The Court rejected the plaintiffs' argument that Delaware's UIM statute was intended to apply exclusively to single tortfeasor cases. Rather, to the *Sload* Court, "[a] simple reading of the statute suggests inclusion of multiple tortfeasors in the definition of underinsured motor vehicle."[39] Specifically, the Court recognized the Legislature's use of the language "all bonds and insurance policies applicable at

---

[36] *See Sload v. Nationwide Mut. Ins. Co.*, 723 A.2d 388, 388 (Del. Super.) *aff'd,* 723 A.2d 398 (Del. 1998).
[37] *See id.* at 388-89.
[38] *Id*. at 389.
[39] *Id*.

9

the time of the accident" as evidencing its intent, "with regard to total liability coverage, to focus on the 'totality of the accident' and thus an intent to apply the statute to multiple tortfeasors."[40] This rationale also appears consistent with the Delaware Supreme Court's construction of the statute in *Ayers,* where the Court emphasized the legislature's use of "the words 'all' and 'total' to indicate that liability coverage must be considered in the aggregate."[41]

Ultimately, at the time of the accident, the tortfeasors in this case held combined liability coverage limits of $125,000, which Plaintiff has since recovered. This amount well-surpasses the UIM benefits available to Plaintiff under both the Liberty Mutual policy and her policy with State Farm. Thus, State Farm's Motion for Summary Judgment is GRANTED.

## CONCLUSION

While the Court believes this is a legally correct decision under the law at the time of the accident, it finds comfort that the General Assembly has recognized the previous statute was being used by insurance companies to limit coverage in cases where the plaintiff was significantly injured and the liability coverage was not sufficient to provide fair compensation. Clearly this was not intended by the framers of the original statute and was inconsistent with the intent of the law.

---

[40] *Id*. at 389-90.
[41] *See Ayers*, 772 A.2d at 181.

Fortunately the statute as changed will prevent such injustice from continuing.

Unfortunately for Plaintiff the previous statute controls and State Farm's Motion

must be granted.

IT IS SO ORDERED.


/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.

11