# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

VANESSA HARPER and          )
EARNEST HARPER,             )
                Plaintiffs,          )
                                  )
        v.                  )          C.A. No. K22C-07-005 NEP
                                  )
STATE FARM MUTUAL           )
AUTOMOBILE INSURANCE        )
COMPANY, a foreign insurance )
company,                    )
                                  )
                Defendant.           )

Submitted: September 26, 2022
Decided: December 8, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Defendant's Motion to Dismiss*
**GRANTED**

Nicholas H. Rodriguez, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, *Attorney for Plaintiffs*.

Krista E. Shevlin, Esquire, Weber Gallagher Simpson Stapleton Fires & Newby LLP, New Castle, Delaware, *Attorney for Defendant*.

**Primos, J.**

Before this Court is the motion to dismiss of Defendant State Farm Mutual Automobile Insurance Company (hereinafter "Defendant"). Plaintiffs Vanessa Harper and Earnest Harper (hereinafter "Plaintiffs") brought this action against Defendant to demand coverage under their uninsured motorist policy (hereinafter the "UM policy") with Defendant. The sole issue in this case is whether a horse-drawn buggy is a "motor vehicle" for purposes of the UM policy. For the reasons that follow, the Court concludes that it is not, and the motion to dismiss is therefore **GRANTED**.

## BACKGROUND[1]

On August 18, 2020, while Vanessa Harper was operating a motor vehicle in Kent County, a horse-drawn buggy entered the intersection in front of her, failing to yield the right-of-way at a stop sign.[2] As a result, Ms. Harper's vehicle collided with the horse that was pulling the buggy,[3] and Ms. Harper was seriously injured.[4] The buggy was not covered by insurance or any other liability protection to compensate Ms. Harper for her injuries.[5]

When the collision occurred, Plaintiffs' UM policy with Defendant insured their vehicle up to $100,000 per person and $300,000 per accident resulting in bodily injury.[6] While the text of the UM policy is not included in the Complaint, Defendant included its policy as an exhibit to its motion to dismiss.[7] The UM policy provides

---

[1] Unless otherwise specified, the facts in this section are as alleged in the Complaint, accepting all of Plaintiffs' well-pleaded allegations as true.

[2] Compl. (D.I. 1) ¶ 5. The allegedly negligent operator of the buggy is not a party to this action.

[3] *Id.* ¶ 4.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 7.

[6] *Id.* ¶ 8.

[7] State Farm Mutual Automobile Insurance Company's 12(b)(6) Mot. to Dismiss (D.I. 11) [hereinafter "Mot. to Dismiss"] Ex. A. On a motion to dismiss, the Court's inquiry is generally limited to the "complaint and any attached documents." *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020). However, the court may consider a document outside the complaint where, as here, "the document is integral to a plaintiff's claim and incorporated into the

that Defendant "will pay compensatory damages for ***bodily injury*** and ***property damage*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***."[8]  The UM policy covers only accidents involving "the ownership, maintenance, or use of an ***uninsured motor vehicle*** as a motor vehicle."[9]  "Uninsured motor vehicle" is defined as a "land motor vehicle" meeting various requirements not at issue in this case.[10]  Neither "land motor vehicle" nor "motor vehicle" are separately defined in the UM policy agreement.

Defendant denied coverage under the UM policy.[11]  Plaintiffs filed a Complaint against Defendant on July 5, 2022, seeking damages from Defendant. Defendant filed a motion to dismiss the Complaint on September 19, 2022, arguing that a horse-drawn buggy is not a "motor vehicle" covered by the UM policy.[12] Plaintiffs filed a response on September 26, 2022, arguing that Delaware public policy compels uninsured motorist coverage in this case.[13]

## STANDARD OF REVIEW

Upon the Court's review of a motion to dismiss for failure to state a claim, "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the plaintiff would not be entitled to recover

---

complaint" or "the document is not being relied upon to prove the truth of its contents."). *Id.* (quoting *Vanderbilt Income & Growth Assoc., L.L.C. v. Arvida/JMB Managers, Inc.,* 691 A.2d 609, 613 (Del. 1996)).

[8] Mot. to Dismiss Ex. A at 13.  The bold and italics are in the original policy and designate defined words and phrases.  *Id.* at 3.

[9] *Id.* at 13.

[10] *Id.* at 12.

[11] Compl. ¶ 9.

[12] Mot. to Dismiss.

[13] Pls. Vanessa and Earnest Harper's Resp. to Def.'s 12(b)(6) Mot. to Dismiss (D.I. 13) [hereinafter "Resp."].

under any reasonably conceivable set of circumstances susceptible of proof."[14]  The moving defendant bears the burden of showing that there is no set of facts consistent with the complaint that would entitle the plaintiff to relief.[15]

## ANALYSIS

Whether a horse-drawn buggy is a "motor vehicle" is a question of first impression under Delaware law.  The answer, however, turns on well-settled principles of contract and statutory interpretation.  The plain meaning of "motor vehicle" does not include a vehicle pulled by a horse rather than powered by a motor.  Moreover, Delaware's uninsured and underinsured vehicle coverage statute, 18 *Del. C.* § 3902, does not require a different result.  Thus, since the Complaint alleges a collision with a horse-drawn buggy, and not a motor vehicle, it fails to state a claim upon which relief can be granted.

I.  **A horse-drawn buggy is not a "motor vehicle" within the plain meaning of the UM policy.**

"Insurance policies are contracts, and Delaware courts apply the ordinary principles of contract interpretation to construe insurance policies."[16]  As with any contract, the parties to an insurance policy are bound by the plain meaning of any unambiguous term.[17]  An "insurance policy 'is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'"[18]  While courts construe any ambiguity in an insurance policy against the insurance company,[19] a court should not create "an

---

[14] *Jeanbaptiste v. Clarios, LLC*, 2020 WL 2375047, at *1 (Del. Super. May 11, 2020) (alteration in original) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[15] *Id.*

[16] *Monzo v. Nationwide Prop. & Cas. Ins. Co.*, 249 A.3d 106, 118 (Del. 2021).

[17] *See id.* ("[W]here the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning." (quoting *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288 (Del. 2001))).

[18] *Id.* (quoting *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1131 (Del. 2020)).

[19] *See Kent v. Nationwide Prop. & Cas. Ins. Co.*, 844 A.2d 1092, 1096 (Del. Super. 2004)

ambiguity where none exists" lest it "create a new contract with rights, liabilities and duties to which the parties had not assented."[20]

The Delaware Supreme Court has instructed courts to use dictionary definitions as a guide when determining the plain meaning of undefined contract terms because dictionaries are the "customary reference source that a reasonable person in the position of a party to a contract would use to ascertain the ordinary meaning of words not defined in the contract."[21] Dictionary definitions of "motor vehicle" are somewhat varied but are nevertheless instructive in this case. Merriam Webster defines a "motor vehicle" as "an automotive vehicle not operated on rails," especially "one with rubber tires for use on highways."[22] "Automotive" is in turn defined as "self-propelled."[23] The Random House Dictionary defines "motor vehicle" as "any transportation vehicle designed for use on highways, as an automobile, bus, or truck."[24] An "automobile" is "a passenger vehicle designed for operation on ordinary roads for the convenience of an individual or family and typically having four wheels and an internal-combustion gasoline engine."[25] Finally, the Oxford English Dictionary defines "motor vehicle" as "a road vehicle powered by an internal-combustion engine."[26] While these definitions vary in the details,

("Ambiguity is construed against the insurer, and in favor of the insured, because the insurer drafted the language.").

[20] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) (quoting *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)); *see also Martin v. Nat'l Gen. Assurance Co.*, 212 A.3d 269, 2019 WL 2402927, at *2 (Del. 2019) (TABLE) ("[T]he doctrine of *contra proferentem* requires ambiguous language in an insurance policy to be construed against the insurance company. . . . In light of the unambiguous policy language, the doctrine of *contra preferentem* is not applicable here.").

[21] *Lorillard*, 903 A.2d at 738.

[22] *Motor vehicle*, Webster's New Collegiate Dictionary (3d. ed. 1973).

[23] *Automotive*, Webster's New Collegiate Dictionary (3d. ed. 1973).

[24] *Motor vehicle*, The Random House College Dictionary (Rev. ed. 1988).

[25] *Automobile*, The Random House College Dictionary (Rev. ed. 1988).

[26] *Motor Vehicle*, Concise Oxford English Dictionary (12th ed. 2011).

they all require self-propulsion, usually by way of an internal-combustion engine.[27] A horse-drawn buggy is certainly a vehicle, but it is neither self-propelled nor driven by a combustion engine. Rather, it is propelled by the movement of a horse, which (unlike a combustion engine) is not a mechanical component of the vehicle.

Courts in other jurisdictions have reached the same conclusion, reasoning, for example, that "the plain and ordinary definition of 'motor vehicle' is a self-propelled vehicle as opposed to a vehicle propelled by an external power source, such as a buggy pulled by a horse or a wagon pulled by a child."[28] The same conclusion is appropriate under Delaware principles of contract construction. Thus, the plain terms of Plaintiffs' UM policy do not provide uninsured motorist coverage for collisions with horse-drawn buggies.

## II. 18 *Del. C.* § 3902's coverage requirement and the public policy behind it do not dictate a different result.

Plaintiffs argue that "based on Delaware public policy, . . . horse-drawn buggies should be covered."[29] In support of this proposition, they cite 18 *Del. C.* § 3902 and case law construing it to evince a public policy favoring broad uninsured/underinsured motorist coverage.[30] However, the Court cannot impose

---

[27] The Court does not mean to suggest that a car powered by an electric motor, rather than an internal-combustion engine, does not fall within the plain meaning of "motor vehicle."

[28] *Ferguson v. Gateway Ins. Co.*, 151 S.W.3d 911, 913 (Mo. Ct. App. 2004); *see also Davis v. Progressive Direct Ins. Co.*, 626 S.W.3d 518, 521–22 (Ky. 2021) (rejecting the argument that a horse and buggy was a "land motor vehicle or trailer of any type" under an uninsured motorist policy); *Miller v. Troyer*, 2019 WL 12239667, at *1 (Ohio Com. Pl.) (concluding after remand that "[a]n Amish horse and buggy is not an uninsured motor vehicle and insurance coverage is not available to plaintiff under this policy").

[29] Resp. at 2.

[30] *See, e.g.*, *Jenkins v. Wilson*, 2012 WL 1408885, at *2 (Del. Super. Mar. 30, 2012) ("The above statute [18 *Del. C.* § 3902] is the result of Delaware's strong public policy in support of [uninsured motorist] coverage and against limitations on such coverage. The legislative purpose for the requirement that UM coverage be available to the public is to protect the innocent from the negligence of unknown or impecunious tortfeasors.") (internal quotations and citations omitted); *Tillison v. GEICO Secure Ins. Co.*, 2017 WL 2209895, at *3 (Del. Super. May 15, 2017) ("The public policy of Delaware requires that policy provisions 'attempting to limit the right of injured

6

coverage requirements on Defendant based on free-floating public policy considerations. Rather, public policy can play two possible roles. First, Delaware courts will narrowly construe limitations or exclusions in an uninsured motorist policy.[31] Second, Delaware courts will invalidate altogether provisions that restrict coverage to less than that required by the minimum uninsured motorist coverage provisions in 18 *Del. C.* § 3902.[32]

Plaintiffs have not suggested a construction of "motor vehicle" that would include horse-drawn buggies, nor, as explained above, does the Court see any ambiguity in the term to permit such construction. Since the UM policy is unambiguously limited to uninsured motor vehicles, the sole remaining question is whether that limitation is consistent with 18 *Del. C.* § 3902.

"Insurance policy provisions designed to reduce or limit the coverage to less than that prescribed by the Delaware statute, 18 *Del. C.* § 3902, are void."[33] In interpreting 21 *Del. C.* § 2118, Delaware's statute requiring motor vehicle insurance, the Delaware Supreme Court explained that the "appropriate analysis to determine if coverage limitations or exclusions are valid is to start with the language of the statute, and only if it is ambiguous, to consider relevant public policy."[34] The same principle applies with equal force to 18 *Del. C.* § 3902.[35] Thus, the Court can only

---

persons to uninsured/underinsured motorist coverage be narrowly construed.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Washington*, 641 A.2d 449, 450 (Del. 1994))).

[31] *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Washington*, 641 A.2d 449, 452–53 (Del. 1994) (construing State Farm's "named driver exclusion" to apply only to liability insurance and not to underinsured motorist coverage).

[32] *See, e.g.*, *Cropper v. State Farm Mut. Auto. Ins. Co.*, 671 A.2d 423, 425–27 (Del. Super. 1995) (invalidating exclusion of government-owned vehicles from the definition of uninsured vehicle), *aff'd*, 676 A.2d 907 (Del. 1995) (TABLE).

[33] *Frank v. Horizon Assur. Co.*, 553 A.2d 1199, 1201–02 (Del. 1989).

[34] *State Farm Mut. Auto. Ins. Co. v. Kelty*, 126 A.3d 631, 641 (Del. 2015).

[35] *See Tillison*, 2017 WL 2209895, at *2 ("In order to determine whether policy limitations and exclusions are valid, the Court looks first to the language of 18 *Del. C.* § 3902. If the statute is ambiguous, the Court will consider the relevant public policy.") (internal citations omitted).

consider Plaintiffs' public policy arguments if the statutory language is ambiguous. A statute (much like a contract) is ambiguous only if it is "reasonably susceptible to different interpretations."[36]

Turning to the language of the statute, 18 *Del. C.* § 3902(a) provides that:

No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of **uninsured or hit-and-run vehicles** for bodily injury, sickness, disease, including death, or personal property damage **resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.**

An "uninsured vehicle" is defined, as most relevant here, as:

**One for which there is no auto liability bond, insurance or other security applicable** at the time of the accident in at least the amounts required by **the financial responsibility law where the auto is principally garaged or registered**.[37]

The Complaint asserts that a horse-drawn buggy is an "uninsured vehicle" under this definition because it is a vehicle for which there "was no auto liability bond, insurance, or other security applicable at the time of the accident covering the vehicle . . ."[38] However, even assuming *arguendo* that this provision is meant to encompass vehicles without motors,[39] there is no "financial responsibility law"

---

[36] *Ins. Com'r of State of Delaware v. Sun Life Assur. Co. of Canada (U.S.)*, 21 A.3d 15, 20 (Del. 2011).

[37] 18 *Del. C.* § 3902(a)(3) (emphasis supplied).

[38] Compl. ¶ 7.

[39] The statute appears to use "vehicle" and "motor vehicle" interchangeably. By specifically referencing "motor vehicles" and not any other type of vehicle, the General Assembly can be inferred to have intentionally omitted coverage of motorless vehicles. *See Leatherbury v. Greenspun*, 939 A.2d 1284, 1291 (Del. 2007) (explaining that the *expressio unius est exclusio alterius* maxim requires that where "the persons and things to which [a statute] refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature" (quoting Norman J. Singer, Sutherland Statutes and Statutory Construction, § 4915

requiring insurance or similar coverage of horse-drawn buggies in Delaware. The statute operates to guarantee uninsured motorist coverage when a negligent tortfeasor was required by law to carry liability insurance but failed to do so. For example, owners of motor vehicles must carry liability insurance pursuant to 21 *Del. C.* §§ 2118 and 2902.[40] By contrast, the Court has identified no provision requiring all vehicles, or horse-drawn buggies specifically, to carry liability insurance.[41] Thus, 18 *Del. C.* § 3902(a) is not reasonably susceptible of an interpretation that would compel Defendant to provide uninsured motorist coverage for collisions with horse-drawn buggies. Plaintiffs' public policy arguments are therefore inapposite. To the extent this coverage gap leaves motorists like Plaintiffs unable to recover damages resulting from another party's negligent operation of a buggy or any other vehicle not required to carry liability insurance under Delaware law, the solution lies with the General Assembly and not with the courts.[42]

---

(3d Ed.))).

[40] For the purposes of Title 21, "motor vehicle" is defined, consistent with its plain meaning, as "**every vehicle**, as defined in this section, **which is self-propelled**, except farm tractors, electric bicycles, electric personal assistive mobility devices, and OHVs." 21 *Del. C.* § 101(41) (emphasis supplied). "Vehicle" is defined as "every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks and excepting electric trackless trolley coaches, electric bicycles, electric personal assistive mobility devices and excepting OHVs." *Id.* §101(87).

[41] The law governing the use of horse-drawn buggies on public roads is 21 *Del. C.* § 4104, which provides that "[e]very person riding an animal or driving any animal-drawn vehicle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter, except those provisions of this chapter which by their very nature can have no application." Thus, drivers of horse-drawn buggies must follow the traffic laws applicable to drivers of other vehicles, but there is no indication that they must have the liability insurance required of owners of motor vehicles. *Cf. Knight v. Mayor & Council of City of Wilmington*, 1989 WL 135729, at *1 (Del. Super. Oct. 13, 1989) (rejecting an argument that a horse is a motor vehicle for purposes of the County and Municipal Tort Claims Act and explaining that 21 *Del. C.* § 4104 "does not equate a horse with a motor vehicle").

[42] *See Kelty*, 126 A.3d at 638 ("If the General Assembly desires to mandate full or even more comprehensive coverage for all car accident victims, it can do so by increasing the limits or reshaping the minimum requirements. But it is not the role of the judiciary to require more coverage than that set by the statute.").

9

## CONCLUSION

Since horse-drawn buggies are neither "motor vehicles" within the meaning of State Farm's uninsured motor vehicle policy nor "uninsured vehicles" as used in 18 *Del. C.* § 3902(a), Plaintiffs cannot recover under the UM policy under any set of facts consistent with the Complaint. Accordingly, Defendant's motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress*
oc: Prothonotary
cc: Counsel of Record

10